Douglas E. POTTHOFF, Respondent,

v.

JEFFERSON LINES, INC., and Daniel
Prins, Appellants.

No. CX–84–1357.

Court of Appeals of Minnesota.

Feb. 26, 1985.

Robert J. Brenner, Minneapolis, for respondent.

John C. Zwakman, Craig D. Diviney, William R. Stoeri, Dorsey & Whitney, Robert Lewis Barrows, Leonard, Street & Deinard, David K. Wendel, Joseph M. Stocco & Associates, Minneapolis, for appellants.

Heard, considered and decided by WOZNIAK, P.J., and PARKER, and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Jefferson Lines and Daniel Prins, its president, appeal from a judgment entered after a jury verdict for Douglas Potthoff. Potthoff had alleged that appellants intentionally interfered with his contractual relations with his employer, Four Star Bus Lines. Appellants claim the verdict cannot be upheld because the evidence was insufficient and because the trial court erred in refusing to sustain their justification defense as a matter of law, in excluding hearsay evidence of complaints about Potthoff, and in allowing the jury to award damages for emotional distress and punitive damages. They also contend the verdict was excessive as the result of passion and prejudice. We affirm in part and reverse that part of the judgment comprising damages for emotional distress.

## FACTS

Potthoff brought this action against Jefferson Lines, Inc. (Jefferson), and its president, Daniel Prins, for intentional interference with contractual relations. Jefferson had employed Potthoff as a bus driver on its passenger coaches. After a bus driven by Potthoff was involved in an accident in November 1981, Jefferson fired him for failing to follow its reporting procedures.

At about the time Jefferson terminated Potthoff, four other Jefferson bus drivers began operating as Four Star Bus Lines (Four Star) with the encouragement of Jefferson and Prins. Four Star agreed to take over some of the less profitable routes that Jefferson was required to operate under its license from the ICC. Four Star and Jefferson executed a lease/purchase agreement for four buses to use on those routes and agreed on a servicing and storage arrangement for Four Star's buses at Jefferson's terminal. Jefferson also set its service rates lower for Four Star than for its other service customers.

Potthoff sought employment with Four Star after losing his job with Jefferson. Four Star agreed to hire him as a substitute driver, setting no definite job duration. Potthoff and former Four Star partner Irving Abbott, "a very convincing and credible witness in the view of the [trial] court," testified that it was agreed that Potthoff would work into a full-time position as their need for additional help grew. Potthoff was warned, however, to keep a "low profile" around the Jefferson facility. The implied purpose of a low profile was to avoid causing any disruption among Jefferson employees and to avoid attracting the attention and anger of Prins.

Prins testified that he had no objection to Four Star's hiring of discharged Jefferson employees but that he did not want them on Jefferson premises. He said repeatedly that his only reason for wanting to exclude former employees from the Jefferson terminal was that "it was not a good procedure to have employees that were dis-

charged for cause commingling with my other workers." He said he had no personal animosity toward Potthoff at all and that Potthoff was dismissed solely for violating reporting rules, not for insubordination, absenteeism, tardiness, misconduct, or poor job performance.

Because Four Star stored and serviced its buses at the Jefferson facility, Four Star drivers needed to come onto Jefferson property to leave and pick up buses. Four Star had no central office of its own at that time, and Four Star personnel often met on Jefferson property to discuss business and deliver documents.

Jefferson maintains a lounge on its property known as the driver's room, with a T.V., tables, chairs, and vending machines. Both Jefferson drivers and other drivers having their buses serviced use the room to relax or to do required paperwork.

Prins saw Potthoff on the Jefferson premises for the first time in early December 1981. Potthoff was in the driver's room during a "meeting" where Prins was showing Jefferson drivers a new commercial filmed for Jefferson. Prins found Walter Bailey, a Jefferson supervisor, in a meeting and told him to see that Potthoff left the premises immediately. Bailey contacted Four Star partner James DiGideo and told him it was in Four Star's "best interest" to keep Potthoff off the property if they wanted to renew their service contract in March 1981.

There is a conflict in the testimony about the second incident. Prins said he saw Potthoff inside some Jefferson offices and again told Bailey to get him off the premises. DiGideo and Abbott testified that Prins saw Potthoff bring a bus into the garage and then walk into the driver's room. Abbott testified that Prins came into the garage, told them to "get rid of Potthoff," and said, "I don't care if he ever drives a bus again" and "If you don't get rid of him, you [Four Star] won't be here." The Four Star partners decided immediately that they had to fire Potthoff.

At trial there was testimony that another former Jefferson driver who was working full-time for Four Star, Roger Abrahamson, spent considerably more time in the driver's room than Potthoff. No one ever complained about his presence to Four Star. Abrahamson was hired full-time by Four Star in October 1980 and continued to work there at the time of trial.

Potthoff's theory at trial was that Prins and Bailey intentionally interfered with his contractual relations with Four Star. Additionally, he claimed that Prins and Jefferson acted with willful indifference to his rights. Appellants contended that any interference with Potthoff's contract was completely justified by Jefferson's right to control its property.

The jury found defendants to have wrongfully interfered with the employment contract between Potthoff and Four Star, that such interference was, upon clear and convincing evidence, in willful indifference to Potthoff's rights, and awarded Potthoff compensatory damages of $41,000 for lost income, $15,000 for emotional suffering, and $25,000 in punitive damages.

The trial court denied appellants' motions for judgment notwithstanding the verdict or, in the alternative, a new trial. They appeal from the judgment subsequently entered on the verdict.

## ISSUES

1. Is the evidence sufficient to sustain a verdict of intentional interference with contractual relations?

2. Did the trial court err in refusing to sustain appellants' justification defense as a matter of law or in submitting erroneous instructions to the jury?

3. Did the trial court err in excluding hearsay evidence that Jefferson had received complaints about Potthoff?

4. Did the trial court err in allowing the jury to award damages for emotional distress?

5. Did the trial court err in allowing the jury to award punitive damages?

6. Was the verdict excessive because of passion and prejudice?

## DISCUSSION

■ In reviewing a jury verdict on appeal, the court must consider the evidence in the light most favorable to the prevailing party, and the verdict must be sustained unless it is manifestly and palpably contrary to the evidence. *See, e.g., Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256 (Minn.1980).

### I

Appellants claim the verdict cannot be supported because the proof of two elements is insufficient: (1) appellant's knowledge of the contract, and (2) compensatory damages.

■ The elements of intentional interference with a present contract, or "inducement to breach," are:

(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.

*Furlev Sales and Associates, Inc. v. North American Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982); *see also Snowden v. Sorensen,* 246 Minn. 526, 532, 75 N.W.2d 795, 799 (1956).

### Knowledge of the Contract

■ Appellants claim that Potthoff's prospects for full-time employment with Four Star amounted to a prospective employment contract of which they had no knowledge, so they cannot be liable for interfering with it. Appellants did not request an instruction differentiating between present and prospective contracts, nor did they raise this argument in their motion for a new trial. Therefore, this instruction becomes the law of the case and is not subject to attack or review on appeal. *See, e.g., Furley Sales,* 325 N.W.2d at 28; *Gryc v. Dayton-Hudson Corp.,* 297 N.W.2d 727, 738–39 (Minn.), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980).

■ The special verdict question asked whether Jefferson Lines, through its officers and employees, wrongfully interfered with the employment contract between Potthoff and Four Star. Viewed in the light most favorable to the verdict, the testimony shows that Potthoff and Four Star had one present contract of employment that contemplated future full-time hours. The evidence is sufficient to support a verdict based on this instruction.

### Consequential Damages

Appellants argue that the $41,000 award of consequential damages was too speculative and remote. However, Abbott testified that as far as he was concerned Potthoff was a good employee and would have continued to work for Four Star if Jefferson had not precipitated his termination. Potthoff presented the wage history of Roger Abrahamson, who was hired at about the same time as Potthoff in 1980, as typical of the wages of a full-time driver for Four Star. He also presented testimony that another full-time driver, Curt LaPree, was hired full-time in July 1981. LaPree still works for Four Star, and Potthoff argued at trial that LaPree got the job he would have taken.

Abrahamson earned about $51,000 from 1981 through 1983. Potthoff's income for the same period was about $7,000. The difference is $44,000, suggesting the jury adopted this measure but subtracted wages for the first few months of 1981, when Potthoff would still have been working part-time.

■ Appellants argue that there were too many contingencies to establish damages on this basis. However, damages need not be proved to an absolute certainty. Once a loss is established, "the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." *Polaris Industries v. Plastics, Inc.,* 299 N.W.2d 414, 419 (Minn. 1980) (quoting *Leoni v. Bemis Co., Inc.,* 255 N.W.2d 824, 826 (Minn.1977)). Potthoff's evidence constituted a reasonable basis on which to estimate his damages.

## II

Appellants contend they had an absolute right to exclude Potthoff from the Jefferson terminal and could exercise that right without liability. Alternatively, they argue that the jury instruction given on justification was erroneous and merits a new trial.

 Justification is largely a question of fact for the jury, the standard being reasonable conduct under all the circumstances of the case. *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 537, 134 N.W.2d 892, 900 (1965). Interference is not justified when it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant. *Furlev Sales*, 325 N.W.2d at 27; *Stephenson v. Plastics Corp. of America, Inc.*, 276 Minn. 400, 416, 150 N.W.2d 668, 680 (1967). The defendant has the burden of proving sufficient justification. *Furlev Sales*, 325 N.W.2d at 27.

The trial court rejected appellants' request for a directed verdict based on an absolute right to exclude Potthoff from their property and instructed the jury on justification as follows:

If you find that defendant corporation, its officers or employees [procured] the breach of a contract, you must consider whether or not that conduct was without justification.

The defendant, Jefferson Lines, has a right to exclude plaintiff from its property. But, *if the exercise of that right interferes with the contractual relations of plaintiff, and it is done with the indirect purpose of causing harm to plaintiff, it is not justified.*

Defendants have the burden of proving by the greater weight of the evidence justification for any interference with the contract. * * *

(Emphasis added).

There is no merit to appellants' claim that they are absolutely entitled to exclude Potthoff from their property without liability. In contracting with Four Star for use of the Jefferson terminal, Jefferson surrendered some of its rights to absolutely control the premises. Jefferson had to let Four Star and its employees use the premises to the extent necessary to perform the contract. Jefferson knew that Four Star drivers could reasonably be expected to use the driver's lounge and, in fact, allowed another former Jefferson driver to do so. In any event, Prins' behavior went beyond assertion of his right to control the premises; he told Four Star to "get rid of" Potthoff or he would not renew Four Star's contract.

 The trial court's instruction on justification substantially reflected the law. We will not address appellants' argument that the jury should have been instructed differently based on language in *Bennett v. Storz Broadcasting* because appellants did not ask for this instruction at trial, nor did they raise the issue in their motion for a new trial. *See Furlev Sales*, 325 N.W.2d at 28.

## III

A Jefferson Lines supervisor testified that he had received complaints about Potthoff from Jefferson drivers. When asked about the substance of the complaints, Potthoff objected, and the trial court sustained the objection on hearsay grounds. Appellants contend that the testimony was not hearsay because it was not offered to prove the truth of the complaints but to show what they had *heard* about Potthoff as an explanation for why they acted the way they did toward him.

 Determinations regarding hearsay evidence are largely within the discretion of the trial court. *Hase v. American Guarantee and Liability Insurance Co.*, 251 N.W.2d 638, 641 (Minn.1977). When evidence is admitted "not to prove the truth of the matter asserted," a cautionary instruction is given to the jury. If the trial court believes the jury would believe the truth of the assertions despite the cautionary instruction, it is a better practice to require the witnesses to be brought forward in order to eliminate the hearsay objection, especially when, as here, the evidence goes to the heart of the matter.

■ Appellants offered no reason why the complaining drivers could not testify in person. Furthermore, appellants answered a pretrial interrogatory that Prins was the only person with complaints about Potthoff. The trial court's decision to exclude the hearsay was not an abuse of discretion.

## IV

■ The jury awarded Potthoff $15,000 in damages for emotional distress caused by Jefferson's interference. Appellants contend first that damages for emotional distress cannot be recovered in an action for tortious interference with contract. In *Swaney v. Crawley*, 133 Minn. 57, 60, 157 N.W. 910, 911 (1916), the court said:

> [In an action for interference with contract relations] the injured party is limited, as a general rule, to such damages as might have been recovered for a breach of contract itself. * * * Of course, the rule is broad enough, in a case where the character and reputation of the injured party is affected, * * * to include compensation for an injury of that character. And in a particular case, where express malice is shown, exemplary damages may perhaps be recovered.

Damages for emotional distress are not recoverable in contract actions under Minnesota law. *See, e.g., Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 (Minn. 1979).

The trial court relied on the Restatement (Second) of Torts § 774A (1979), which provides:

> One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause; and
> (c) *emotional distress* or actual harm to reputation, *if* they are *reasonably to be expected to result from the interference.*

(Emphasis added). The trial court also relied on *Mooney v. Johnson Cattle Co.*, 634 P.2d 1333 (Or.1981), in which the Oregon Supreme Court allowed recovery for emotional distress in an action for interference with contractual relations if the injury is "a common and predictable result of disrupting the type of relationship or transaction involved." *Id.* at 1338.

■ We agree that emotional distress could be a natural result of interference with contract relations. Therefore, in appropriate cases emotional distress damages are recoverable in this type of action.

■ In the alternative, appellants argue that the evidence is insufficient as a matter of law to support Potthoff's claim of emotional distress. Potthoff testified that after Four Star fired him, he applied for more than 50 jobs and was rejected for all of them. He also incurred about $15,000 in debts. Because of this financial hardship, he testified that his mental state wasn't "too good." He also said his unemployment affected him mentally

> quite a bit when you don't have a place of employment. Not only the fact you don't have money to live normally with, but also the fact that I have had to borrow money * * * it's not very comforting to know when you wake up in the morning you don't have something to do. I'm not just speaking of working and earning money, but working for just the sense of self-security.

This evidence alone is insufficient proof of emotional distress. *See Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 379 (Minn.Ct.App.1984). There is no evidence that Potthoff saw a psychologist or a physician for treatment of any emotional problems; the trial court erred in submitting the issue to the jury.

## V

■ The jury also awarded Potthoff $25,000 in punitive damages against Jefferson Lines, Inc. Jefferson contends that punitive damages are not recoverable in an action for intentional interference with contractual relations. We disagree and hold,

based on *Swaney v. Crawley*, that punitive damages are recoverable in appropriate cases.

In the alternative, Jefferson argues that the evidence is insufficient to justify punitive damages. The jury was instructed in accordance with the punitive damages statute, Minn.Stat. § 549.20, subd. 1 (1982), and answered affirmatively the following special verdict question:

> Did such wrongful interference between Douglas Potthoff and Four Star Lines show, upon clear and convincing evidence, a willful indifference to the rights of Douglas Potthoff?

 The trial court found an abundance of evidence to sustain the punitive damage award. As the court explained in denying a new trial, Prins was perceived as an "arrogant, powerful, and feared executive who would not hesitate to step on others." Prins said he didn't care if Potthoff ever drove a bus again. Furthermore, Potthoff appeared to be the "random victim of an unprovoked outburst of anger," because Prins tolerated Roger Abrahamson's presence on the premises. Viewing this evidence in the light most favorable to the verdict, the jury could have found that this was a reasonable amount to punish Jefferson and deter similar arbitrary acts in the future.

Appellants contend the jury should have been instructed under the principal-agent rule of Minn.Stat. § 549.20, subd. 2, which authorizes an award of punitive damages against a principal for acts of an agent only if the principal authorized or ratified the act or was reckless in employing the agent. Appellants did not request this instruction at trial or argue it in their motion for a new trial. We will not address this issue on appeal. *See Furlev Sales*, 325 N.W.2d at 28.

## VI

Finally, appellants claim that Potthoff's testimony about the circumstances surrounding termination by Jefferson was irrelevant and aroused the jury's passion, resulting in an excessive verdict. We have already addressed the damages issues above and have found evidence to sustain the verdict in all respects except for that part regarding emotional distress. The verdict is not otherwise excessive.

## DECISION

We affirm the trial court on all issues except for the damages for emotional distress. Accordingly, we reduce the judgment by $15,000.

Affirmed in part and reversed in part.