**RUSHFORD STATE BANK,**
**Respondent,**

v.

**Clifton KJOS, et al., Appellants,**

**Darlene Kjos, a/k/a Darlene Kjos**
**Rislov, et al., Defendants,**

**Curtis W. Courrier, et al., Respondents.**

**No. C2–89–321.**

Court of Appeals of Minnesota.

Sept. 26, 1989.

Thomas M. Manion, Jr., Herrick & Manion, Lanesboro, for appellants.

David M. Jennings, Robertson, Blahnik & Jennings, Winona, for Rushford State Bank.

Timothy A. Murphy, David W. Nord, Rippe, Hammel & Murphy, Caledonia, for Curtis W. Courrier, et al.

Considered and decided by HUSPENI, P.J., and NORTON and LOMMEN,* JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Appellants Clifton Kjos and Steven Anderson appeal from the trial court's summary judgment in a declaratory judgment action which determined that respondents Curtis and Robin Courrier have a paramount right to purchase agricultural property Kjos previously owned. We reverse.

## FACTS

Clifton and Darlene Kjos, as husband and wife, owned and operated a farm in Fillmore County which was mortgaged to Rushford State Bank (Bank). Olga Kjos, Clifton's mother, held a contract for deed on the farm. The Bank became the fee owner of the property when it foreclosed on the mortgage after the Kjoses suffered financial hardship. When the Kjoses' marriage was dissolved in March 1986, Darlene waived her interest in the farm and Clifton was awarded the entire remaining interest.

On June 30, 1987, the Courriers entered into an earnest money contract and deposited $500 with the Bank for the sale of the farm. Pursuant to Minn.Stat. § 500.24, subd. 6 (1986) ("old law"), the Bank, by letter dated June 30, 1987, notified Clifton, Darlene, and Olga of the offer to purchase the farm for $17,000 cash. Clifton received the notice by certified mail on July 1, 1987. Upon sale of a farm in foreclosure circumstances, the "immediately preceding former owner" has a statutory right to buy the farm "at a price no higher than the highest price offered by a third party that is acceptable to the seller." On August 25, 1987, Clifton notified the Bank that he would exercise his statutory right to purchase the property, noting that he assigned his interest in the property to Steven Anderson. Neither Olga nor Darlene responded to the Bank's offer.

On September 24, 1987, the Bank mailed a second letter to Clifton, Darlene, and Olga to inform them that the prior notice may have been defective since a revision to Minn.Stat. § 500.24 became effective on July 1, 1987 ("new law"). The Bank reissued the notice of the offer to sell to comply with the "new law."

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Clifton received this second offer on October 2, 1987, and accepted it two weeks later. Although Clifton did not tender any money, Anderson deposited $17,000 with the Bank for the purchase of the property. Again, neither Olga nor Darlene responded.

The Bank commenced a declaratory judgment action to find Olga and Darlene in default and to determine whether respondents or Anderson were entitled to purchase the property. Respondents, arguing that Clifton did not have the right to assign his interest in the property, claimed to have an absolute right to buy the land.

The trial court granted respondents' motion for summary judgment, concluding that Olga and Darlene were in default, that Clifton could not legally assign his rights in the property to Anderson pursuant to Minn.Stat. § 500.24, subd. 6 (Supp.1987), and that respondents had a paramount right to purchase the property.

### ISSUE

Did the trial court err in granting summary judgment that respondents have a paramount right to purchase the subject property?

### ANALYSIS

On review of a summary judgment where the facts are not in dispute, this court will reverse only when the trial court erred in its application of the law. *Glenn Paul Court Neighborhood Ass'n. v. Paster*, 437 N.W.2d 52, 55 (Minn.1989).

By stipulation in the present case, the parties agreed there were no remaining issues of fact and the case was properly submitted to the court for summary judgment. However, appellants argue the trial court erred in its determination that Clifton could not legally assign his rights in the property and that respondents have a paramount right to purchase the land.

The law establishing the right of first refusal after foreclosure of farm land was established by the legislature in 1986. *See*

1986 Minn.Laws ch. 398, art. 20, § 1; 1986 Minn.Laws 1st Sp.Sess. ch. 2, art. 2, § 13. Although it required that an offer to sell be made to the former owner and established a time limit within which a former owner must exercise the right to purchase, it neither described what would constitute acceptance nor prohibited assignments. Minn.Stat. § 500.24, subd. 6 (1986) provided in part:

> Subd. 6. DISPOSAL OF LAND. * * * The former owner must exercise the right to buy farm land within 60 days after receiving an offer to buy under this subdivision.

In 1987, the legislature extensively revised the law. The revision of section 500.-24 became effective on July 1, 1987, and applied to "property with *initial offers made* under section 500.24, subdivision 6, *after* July 1, 1987." 1987 Minn.Laws ch. 396, art. 2, § 4 (emphasis added). Subdivision 6 was revised to include several subparts including a subpart (g) reading:

> * * * The immediately preceding former owner must exercise the right to buy the agricultural land or farm homestead located on agricultural land, in writing, within 65 days after an offer to buy under this subdivision is mailed with a receipt of mailing or is personally delivered. Within ten days after exercising the right to lease or buy by accepting the offer, the immediately preceding owner must fully perform according to the terms of the offer including paying the amounts due. A seller may sell and a lessor may lease the agricultural land or farm homestead subject to this subdivision to the third party in accordance with their lease or purchase agreement if:
>
> (1) the immediately preceding former owner does not accept an offer to lease or buy before the offer terminates; or
>
> (2) the immediately preceding former owner does not perform the obligations of the offer, including paying the amounts due, within ten days after accepting the offer.

*See* 1987 Minn.Laws ch. 396, art. 2, § 2 codified at Minn.Stat. § 500.24, subd. 6(g)

(Supp.1987). Subdivision 6(k) was added and provided as follows:

> The right of an immediately preceding former owner to receive an offer to lease or purchase agricultural land under this subdivision may not be assigned or transferred, but may be inherited.

*See* 1987 Minn.Laws ch. 396, art. 2, § 2 codified at Minn.Stat. § 500.24, subd. 6(k) (Supp.1987).

The Bank sent its first letter offering the property to the Kjoses by certified mail on June 30, 1987. Clifton received his letter and signed for Olga on July 1, 1987. Darlene received her letter on July 3, 1987. Respondents argue the "new law" must apply to everyone in this case because Darlene and Olga actually received their offers after July 1, 1987. We cannot agree.

■ General contract law provides that an offer is made when it is received, not posted. *See* Williston, *Contracts*, 3rd ed. § 34 (1957). However, because the 1987 revision of subdivision 6(g) requires a former owner to exercise the right to repurchase the property within 65 days after an offer "is mailed with a receipt of mailing or is personally delivered," we believe the legislature also intended that an offer could be made upon the mailing of a certified letter.

■ Regardless of which theory is applied, the Bank made its initial offer to Clifton on or before July 1, 1987. Consequently, the "old law" is applicable in this case. Pursuant to Minn.Stat. § 500.24 (1986), Clifton properly accepted the Bank's offer to repurchase the property. In 1986, subdivision 6 required only that the former owner exercise the right to buy within 60 days after receiving an offer to buy, and Clifton's August 25, 1987 offer was within that 60 day period.

■ Further, the trial court's determination that Olga and Darlene were in default on the Bank's offer is irrelevant and cannot affect Clifton's right to accept the offer. We are cited to no authority requiring that all former owners exercise their rights of first refusal. Any one or all of them having an undivided ownership interest may exercise the right, either alone or together, to repurchase the entire tract of land. *Cf. Powers v. Sherry*, 115 Minn. 290, 294, 132 N.W. 210, 211 (1911) (one who owns part of an entire tract of land, or has some interest therein, which has been sold on foreclosure or execution sale, may redeem the entire tract as owner). *See also Holterhoff v. Mead*, 36 Minn. 42, 29 N.W. 675 (1886) (one of two tenants in common may redeem entire tract).

■ Finally, the trial court's conclusion that Clifton could not legally assign his rights in the property to Anderson cannot stand. Clifton did not violate any statutory provisions in the assignment. The "old law" is silent regarding assignments. Although the "new law" prohibits the assignment of the *right to receive the offer* of a right of first refusal, we need not determine whether the "new law" would prohibit Clifton from assigning his rights in the property after he had already accepted the right of first refusal.

### DECISION

Summary judgment granting Curtis and Robin Courrier a paramount right to purchase the property is reversed.

Reversed.