Kenneth SCHUMACHER, et al.,
Respondents,

v.

Bruce R. IHRKE, et al., Appellants.

No. C3-90-2178.

Court of Appeals of Minnesota.

April 30, 1991.

330

C. Thomas Wilson, Reed H. Glawe, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondents.

Jerome W. Perry, Jerome Perry Law Offices, Rochester, for appellants.

Considered and decided by AMUNDSON, P.J., HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellants challenge the trial court's grant of summary judgment in favor of respondents arising from an action for tortious interference with contract. We affirm.

## FACTS

Appellants Bruce and Susan Ihrke and respondents Ken and Mary Schumacher

are neighboring farmers in Wabasha County, Minnesota. Elaine Parker owned 80 acres of land (Parker property) adjacent to the property owned by these two parties. Elaine Parker's son, Russell, works part time for appellants and full time for a feed company in Plainview, Minnesota.

In 1986, Farm Credit Bank (FCB) foreclosed upon the Parker property. FCB held a foreclosure sale in May 1986; the statutory redemption period expired in May 1987.

In August 1988, FCB offered the Parker property for sale and appellants and respondents submitted sealed bids. Respondents submitted the highest bid of $56,000. In light of the competitive bidding, FCB decided to hold an auction for the land. FCB notified appellants and respondents of the date of the public auction. Prior to any bidding at the auction, FCB informed all parties present of Elaine Parker's statutory right of first refusal to purchase the property according to Minn.Stat. § 500.24, subd. 6 (1988).

At the auction, respondents were the highest bidders at $66,000,[1] and signed a purchase agreement for that amount which stated that the purchase was subject to the former owner's right of first refusal.

On September 26, 1988, FCB accepted and approved respondents' purchase offer, but no money changed hands. On October 4, 1988, FCB sent Elaine Parker notice of her right of first refusal. A few days later appellants learned from Russell Parker that Elaine Parker had received her right of first refusal.

On or about October 10, 1988, appellants and Russell Parker met with Elaine Parker at her house. They decided to meet with appellants' attorney to determine how, if possible, appellants could acquire the Parker property through Elaine Parker's right of first refusal.

On October 25, 1988, appellants, Russell Parker and Elaine Parker met with appellants' attorney in his office. The attorney explained that after Elaine Parker exercised her right of first refusal, she would then have the right to sell to her son and her son could then sell to whomever he wished. When Elaine Parker decided to conduct such a transaction, appellants' attorney immediately sent a letter exercising Elaine Parker's right of first refusal. On November 1, 1988, appellants' attorney sent to FCB a remittance of $64,574.52 on behalf of Elaine Parker. That same day, Elaine Parker signed a warranty deed conveying the 80 acres to her son. On November 5, 1988, Russell Parker signed a deed conveying the property to the appellants. These last two sales were for $64,574.52 each. However, no monies changed hands other than the initial $64,574.52, which appellants provided to Elaine Parker for her exercise of the right of first refusal.

Respondents brought an action alleging that appellants interfered with respondents' contract to purchase the Parker property from FCB. Both parties moved for summary judgment and the trial court granted respondents' motion. The court ordered respondents to pay appellants $64,574.52 (the amount appellants paid for the property); that upon receipt of this sum, appellants were to transfer the property to the respondents; that any and all liens or encumbrances created by appellants against the real estate be removed; and that appellants pay respondents $690.56 for costs.

### ISSUE

Did the trial court err in granting summary judgment in favor of the respondents based on intentional interference with contract?

### ANALYSIS

■ On appeal from summary judgment, this court must determine whether the trial court erred in applying the law and whether any genuine issues of material fact exist. *Harbal v. Federal Land Bank of St. Paul*, 449 N.W.2d 442, 446 (Minn.

---

**1.** Appellants acknowledge that prior to the auction they had decided to bid no more than $65,000.

App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990). "Statutory construction is a question of law, subject to de novo review by [the court of appeals]." *In re Copeland,* 455 N.W.2d 503, 506 (Minn.App. 1990), *pet. for rev. denied* (Minn. July 31, 1990).

The trial court found that, as a matter of law, respondents established the following elements of interference with contract: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) an intentional interference with the contract (4) without justification; and (5) damages. *See Royal Realty Co. v. Levin,* 244 Minn. 288, 292, 69 N.W.2d 667, 671 (1955).

"Interference with contract" * * * includes "any act injuring or destroying persons or property which retards, makes more difficult, or prevents performance, or makes performance of a contract of less value to the promisee." *Id.* at 291 n. 5, 69 N.W.2d at 671 n. 4, *quoted in Aslakson v. Home Sav. Ass'n,* 416 N.W.2d 786, 788 (Minn.App.1987).

Appellants challenge the trial court's conclusions on each element of intentional interference with contract.

### 1. Existence of a contract

■ Appellants contend that the respondents' contract with FCB to purchase the Parker property only existed if Elaine Parker did not exercise her right of first refusal. *See Malevich v. Hakola,* 278 N.W.2d 541, 544 (Minn.1979). We disagree.

■ Respondents and the bank were both bound to complete the transfer of the Parker property unless Elaine Parker exercised her right of first refusal. There were no conditions precedent that needed to be met before a contract came into being. Tortious interference with contract concerns interference "which * * * prevents performance * * * of a contract." *Royal Realty,* 244 Minn. at 291 n. 5, 69 N.W.2d at 671 n. 4. Appellants' interference prevented the contractually-agreed-upon transfer of the property from FCB to respondents. The trial court correctly ruled that a contract existed between respondents and FCB.

### 2. Wrongdoer's knowledge of the contract

Appellants attended the auction where respondents successfully bid for the property. Appellants then sought an attorney's advice for a means to use Elaine Parker's right of first refusal to obtain the Parker property. The appellants were clearly aware of the contract.

### 3. Intentional interference

■ Appellants argue that they intended to acquire the Parker property from Russell Parker, not to interfere with the contract between respondents and FCB. Appellants knew, however, that in order to possess the Parker property they had to interfere with respondents' contract. This knowledge establishes intentional interference:

The rule applies * * * to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

*Guerdon Indus., Inc. v. Rose,* 399 N.W.2d 186, 188 (Minn.App.1987) (quoting Restatement of Torts (2d) § 766 comment j (1977)). The trial court correctly concluded that appellants intentionally interfered with respondents' contract.

### 4. Justification

■ Appellants argue that Minn.Stat. § 500.24, subd. 6 justified their interference or, in the alternative, that they possessed some equal or superior legal right to purchase the Parker property. We cannot agree. A party proves justification by showing that the interference was reasonable under all the circumstances of the case. *Potthoff v. Jefferson Lines, Inc.,* 363 N.W.2d 771, 776 (Minn.App.1985). Appellants bear the burden of proving sufficient justification. *Furlev Sales and Assoc. v. North Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 27 (Minn.1982). Appellants did not meet this burden.

■ Appellants argue that Minn.Stat. § 500.24, subd. 6 does not expressly prohib-

it the sale of the Parker property by Russell Parker to them. Although they allege this conveyance was lawful and justified, an activity allowed by statute may still constitute tortious interference with contract. *Royal Realty*, 244 Minn. at 291–92, 69 N.W.2d at 671. Accordingly, the issue is not whether appellants have violated Minn.Stat. § 500.24, subd. 6, but rather whether the statute justified an otherwise tortious interference with contract. The trial court correctly concluded that this statute cannot serve, and was not meant to serve, as a basis for justifying transactions of this kind.

The controversy centers on two provisions of Minn.Stat. § 500.24, subd. 6(n):

An immediately preceding former owner, except a former owner who is actively engaged in farming as defined in subdivision 2, paragraph (a), and who agrees to remain actively engaged in farming on a portion of the agricultural land or farm homestead for at least one year after accepting an offer under this subdivision, *may not sell agricultural land acquired by accepting an offer under this subdivision if the arrangement of the sale was negotiated or agreed to prior to the former owner accepting the offer under this subdivision.* A person who sells property in violation of this paragraph is liable for damage plus reasonable attorney fees to a person who is damaged by a sale in violation of this paragraph. *There is a rebuttable presumption that a sale by an immediately preceding former owner is in violation of this paragraph if the sale takes place within 270 days of the former owner accepting the offer under this subdivision. This paragraph does not apply to a sale by an immediately preceding former owner to * * * the owner's spouse's sisters and brothers, or the owner's children.*

(Emphasis added.)

The first portion of the statute prohibits an "arrangement of the sale * * * negotiated or agreed to prior to the former owner accepting the offer under this subdivision." *Id.* Appellants argue that Elaine Parker accepted FCB's offer pursuant to her statutory right on October 25, 1988, without plans or intentions to sell to her son or eventually to appellants. We disagree. Elaine Parker exercised her right of first refusal because appellants had agreed to provide the necessary monies to enable her to exercise her right. The trial court correctly concluded that the agreement to sell the Parker property to appellants occurred prior to Elaine Parker exercising her right of first refusal.

The second portion of the statute establishes a rebuttable presumption that a sale by a former owner, such as Elaine Parker, is unlawful "if the sale takes place within 270 days of the former owner accepting the offer [to purchase the property]." *Id.* The rebuttable presumption does not apply to the sale of the property within the immediate family, as between Russell Parker and Elaine Parker.

Appellants urge this court to interpret Minn.Stat. § 500.24, subd. 6(n) in the same manner as in *Rushford State Bank v. Kjos*, 445 N.W.2d 846 (Minn.App.1989). In *Kjos*, this court interpreted the pre–1988 version of this statute to allow assignments of the right of first refusal. *Id.* at 849. Here, appellants argue that since the statute does not specifically state that the 270-day period applies to transfers by the immediate family to non-family parties, this court should find that appellants, through Parker's transfer of the property to them, were justified in interfering in the contract between respondents and FCB. We cannot do so.

We must read Minn.Stat. § 500.24, subd. 6(n) in terms of the expressed purpose of the statute:

The legislature finds that it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 1. Interpreting the 1986 version of this statute, this court stated:

The legislature, by requiring the foreclosing agency or corporation to offer to sell the land back to the former owner, at the price offered by a third party, clearly expressed its preference that foreclosed property remain in the possession of its former owner whenever possible.

*Harbal,* 449 N.W.2d at 447. In furtherance of the goal to keep agricultural land in the possession of its former owner, the legislature, after this court's decision in *Kjos,* prohibited the assignment of the right of first refusal.

Examining the transfer of property from the bank to the appellants, transaction by transaction, the statutory provision may not expressly prohibit the transfer, but neither does it justify it. Certainly the purpose of the statute as set forth in section 500.24, subd. 6(n) would not be furthered by this transfer.

█ Furthermore, justification for interference with a contract depends on what is reasonable and just under the circumstances. *Potthoff,* 363 N.W.2d at 776. In reality, Elaine Parker lacked the funds to accept FCB's offer before appellants approached her. After the meeting on October 25, 1988, however, she had the necessary funds to exercise her right of first refusal. Contrary to the purpose of the statute, neither she nor her son took possession of the property. She and her son merely acted as conduits through which appellants acquired the property. Neither Elaine Parker nor Russell Parker received any monetary consideration. Russell Parker never actually paid his mother $64,574.52, nor did he ever actually receive this sum upon his sale to respondents. Appellants paid FCB $64,574.52 through Elaine and Russell Parker. Appellants received the Parker property; FCB received $64,574.52. Additionally, appellants provided legal counsel and their attorney made all the necessary arrangements, from exercising the right of first refusal to the subsequent transfers of land to appellants. Elaine Parker and Russell Parker never had their own legal counsel. In effect, Elaine Parker's statutory right of first refusal became the appellants' right of first refusal.

If a former owner may effect a transfer within the 270–day period to a third party via a family member, the statute's purpose is defeated, especially after the legislature prohibited assignments of the right of first refusal, prohibited agreements to sell prior to acceptance of this right, and presumed all sales within 270 days of the exercise of this right other than to immediate family members invalid. Under the circumstances of this case, Minn.Stat. § 500.24, subd. 6 does not justify appellants' interference with respondents' contract, nor does it give them an equal or superior right to the Parker property.

█ In the alternative, appellants argue that their purchase of the Parker property was purely a competitive practice and that they have a legal right which is equal or superior to respondents' right to the Parker property to engage in competitive practices. Again, we disagree. The parties had the opportunity to compete for the property at the public auction but appellants decided at that time not to bid over respondents' highest bid.

Unquestionably, a contract existed between respondents and FCB. A person may interfere with that contract only if that person possesses an equal or superior right to the subject matter of the contract:

> [I]n the protection of his own contractual rights a person may invade another's contractual rights where the former's interest is equal or superior to that of the latter and where such invasion is made with the honest purpose of fairly bettering one's own business, trade, or employment, and not for the primary object of destroying another's employment or business.

*Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 532, 134 N.W.2d 892, 897 (1965). While competition is favored in the law and may justify interference, the rule also requires that "the actor does not employ wrongful means." *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 633 (Minn.1982) (quoting Restatement (Second) of Torts

§ 768 (1979)). Under the facts of this case, appellants' means were "wrongful."

### 5. Damages

 Appellants argue that the trial court erred in ordering specific performance of the contract between respondents and FCB. We disagree. If real property is involved, specific performance is a proper remedy, even if the other remedies would be adequate. *Shaughnessy v. Eidsmo*, 222 Minn. 141, 150, 23 N.W.2d 362, 368 (1946). The court has the discretion to order specific performance. *Fred O. Watson Co. v. United States Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn.1977). Because real property is unique, the trial court correctly ordered appellants to transfer title to the Parker property to respondents.

 Appellants further argue that, in fact, they had the highest bid at the auction and should have been awarded the contract to purchase the Parker property. Appellants did not raise this issue before the trial court; we will not address it here. *Thayer v. American Fin. Advisers*, 322 N.W.2d 599, 604 (Minn.1982). Even assuming that the issue was properly raised, FCB awarded the purchase contract to respondents, and therefore FCB would be the proper party against whom appellants should have brought this action. Appellants, however, never joined FCB as a party in this case.

### DECISION

Appellants tortiously interfered with respondents' contract with FCB to purchase the Parker property. The trial court's summary judgment order in favor of the respondents is supported by the record and consistent with applicable law.

Affirmed.