**Wayne A. JOHNSON, Personal Representative of the Estate of Jayne A. Gray, Respondent,**

v.

**Thomas Richard GRAY, Appellant,**

**Modern Woodmen of America, et al., Defendants.**

**No. C7–94–2290.**

Court of Appeals of Minnesota.

June 13, 1995.

Eugene R. Ouradnik, Bagley, MN, for respondent.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, Tara Patet, Certified Student Atty., William Mitchell College of Law, St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and PETERSON and HARTEN, JJ.

## OPINION

PETERSON, Judge.

Appellant Thomas Gray argues that the district court erred in (1) relying on his murder conviction to grant summary judgment for his wife's estate on the issue of whether he feloniously and intentionally killed her and (2) imposing a constructive trust for the benefit of his wife's heirs on his interest in the properties he held in joint tenancy with her. We reverse the grant of summary judgment on the issue of whether Gray feloniously and intentionally killed his wife, reverse the imposition of a constructive trust, and remand for further proceedings.

## FACTS

Appellant Thomas Gray (Gray) was convicted of and sentenced for the second degree murder of his wife Jayne Gray. *See* Minn.Stat. § 609.19(1) (1992) (person who intentionally but without premeditation causes death of another commits second degree murder). Gray appealed from the judgment of conviction.

Gray and Jayne Gray owned a homestead and other personal property in joint tenancy. Gray also was the primary beneficiary of his wife's $10,000 life insurance policy. The Grays' children were the contingent beneficiaries.

Jayne Gray's father, Wayne Johnson, was appointed personal representative of her estate. Johnson sought a declaratory judgment that under Minn.Stat. § 524.2–803 (1992), Gray was divested of his rights in his wife's estate, his entire interest in their joint tenancy property, and the life insurance proceeds because he had feloniously and intentionally killed her. Johnson brought a summary judgment motion, arguing Gray's conviction for second degree murder was conclusive evidence that he had feloniously and intentionally killed his wife. Gray argued his murder conviction was not final because he had appealed and his appeal still was pending. Gray also claimed that Minn.Stat. § 524.2–803 did not divest him of his one-half interest in the joint tenancy properties.

The district court granted summary judgment for the estate. The court found that because Gray had feloniously and intentionally killed his wife, he could take nothing from her estate. The court severed the Grays' joint tenancies and awarded an undivided one-half interest in these properties to the estate. To prevent Gray from being unjustly enriched by his crime, the court also imposed a constructive trust for the benefit of Jayne Gray's heirs upon Gray's one-half interest in the properties. The court appointed Gray constructive trustee and ordered him to convey the interest held in trust to the estate. Finally, the court divested Gray of all right to his wife's life insurance proceeds and substituted the children as primary beneficiaries. Gray appealed the summary judgment on November 10, 1994.

On November 9, 1994, this court had granted Gray's motion to dismiss his appeal from the judgment of conviction in the criminal proceeding and to remand the case for postconviction proceedings.[1]

---

1. Gray had retained separate counsel for his criminal appeal. Although the order dismissing Gray's appeal was not part of the record before the district court, we may take judicial notice of an order issued by this court. *See* Minn.R.Evid. 201(b) (court may take judicial notice of fact not subject to reasonable dispute).

## ISSUES

I. Did the district court err in relying on Gray's murder conviction to grant summary judgment on the issue of whether he intentionally and feloniously killed his wife?

II. Did the district court err in imposing a constructive trust for the benefit of Jayne Gray's heirs on appellant's one-half interest in their joint tenancy properties?

## ANALYSIS

On appeal from a summary judgment, we must examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* But we are not bound by a district court's decision on a question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Interpretation of a statute is a question of law subject to de novo review. *Schumacher v. Ihrke,* 469 N.W.2d 329, 332 (Minn.App.1991).

The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16 (1992). When the language of a statute is unambiguous, we must "give effect to the statute's plain meaning." *Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986).

### I.

Minn.Stat. § 524.2–803(a) (1992) provides that a surviving spouse, heir or devisee who feloniously and intentionally kills a victim is not entitled to inherit from the victim's estate under a will or the laws of intestacy and the estate passes as if the killer predeceased the victim. Similarly, a joint tenant who felo-

niously and intentionally kills another joint tenant effects a severance of the joint tenancy so that the killer has no rights by survivorship to the jointly owned property. Minn. Stat. § 524.2–803(b) (1992). Further, a beneficiary of a life insurance policy who feloniously and intentionally kills the insured is not entitled to any benefits under the policy. Minn.Stat. § 524.2–803(d) (1992). Minn.Stat. § 524.2–803(f) (1992) provides "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section."

Gray argues his second degree murder conviction is not a final judgment of conviction under Minn.Stat. § 524.2–803(f) because it has not been subject to appellate review. Minn.Stat. § 524.2–803 (1992) does not define "final judgment of conviction." Generally, a judgment becomes final when the appellate process is terminated or the time for appeal has expired. *Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc.,* 268 Minn. 176, 183, 128 N.W.2d 334, 341 (1964). Under this general rule, Gray's conviction would be final only when the direct appeal from his conviction has been terminated or the time for appeal has expired.[2] Because Gray's direct appeal from the judgment of conviction was pending when the summary judgment motion was heard, Gray's conviction was not final and the district court erred in granting summary judgment on the issue of whether Gray feloniously and intentionally killed his wife.

Gray admits, however, that his criminal appeal was dismissed shortly after summary judgment was granted in the present case. The time for direct appeal from the judgment of Gray's conviction now has expired. *See* Minn.R.Crim.P. 28.02, subd. 4(3) (in criminal case, defendant must appeal within 90 days after final judgment). But Gray argues his direct appeal effectively is pending because he sought and obtained dismissal of that appeal specifically for the pur-

2. The fact that a defendant who never appealed from the judgment of conviction subsequently may obtain review of the conviction through a postconviction proceeding does not affect the finality of the conviction for purposes of Minn. Stat. § 524.2–803(f). Many collateral conse-

quences of a conviction properly ensue before the defendant's conviction ever is reviewed. *See State v. Montano,* 437 N.W.2d 772, 773–74 (Minn.App.1989) (listing consequences of conviction that ensue immediately upon guilty verdict).

pose of bringing a postconviction proceeding. *Cf.* Minn.State § 590.01, subd. 1 (1992) (appellate court may stay appeal to allow defendant to seek evidentiary hearing under provisions of postconviction remedy statute).

When a defendant seeks dismissal of an appeal for purposes of bringing postconviction proceedings, it is this court's practice to grant the dismissal motion, to remand the case for postconviction proceedings, and to allow the defendant to raise all issues on appeal from the postconviction order that could have been raised in the direct appeal from the judgment of conviction. *See State v. Steele,* 449 N.W.2d 157, 157 (Minn.1989) (court of appeals' policy in case where defendant moves to stay appeal to seek postconviction evidentiary hearing is to dismiss appeal and allow defendant to raise all issues in subsequent appeal from denial of postconviction relief). Because the order dismissing Gray's direct appeal for purposes of bringing postconviction proceedings has the same effect as a stay of the direct appeal, we agree that under the practice of this court, Gray's conviction is not yet a final judgment of conviction because the appeal is still pending.

However, for purposes of Minn.Stat. § 524.2–803(f), tying the finality of a conviction to the availability of postconviction review when no postconviction proceeding is pending would render the statute meaningless because a convicted defendant is free to seek postconviction relief and subsequent appellate review at any time. *See Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 558, 163 N.W.2d 289, 296 (1968) (defendant free to seek postconviction relief at any time); Minn. Stat. § 590.01, subd. 1 (defendant may seek postconviction relief at any time). When an appeal is dismissed and remanded for postconviction proceedings, the defendant alone controls initiation of the postconviction proceeding. If a defendant who sought dismissal of an appeal and remand for postconviction proceedings failed to file a postconviction petition, the direct appeal would remain pending indefinitely. The pending appeal would prevent the conviction from ever becoming a "final judgment of conviction" under Minn.Stat. § 524.2–803(f). Accordingly,

whether a judgment of conviction is final for purposes of Minn.Stat. § 524.2–803(f) must depend on the availability of direct appellate review of the conviction or on the pendency of a postconviction proceeding after a dismissal of the direct appeal for that purpose.

Minn.Stat. § 524.2–803(f) requires the estate to prove by a preponderance of the evidence that the defendant feloniously and intentionally killed the victim. This requirement can be met even though there has been no final judgment of conviction in a criminal proceeding, but meeting the requirement forces the estate to expend its resources on a trial and prevents the speedy and efficient resolution of the decedent's estate. *See* Minn.Stat. § 524.1–102(b)(3) (1992) (purpose of probate code is to promote speedy and efficient resolution of estate).

■ Therefore, to give effect to Minn.Stat. § 524.2–803(f) and the purpose of the probate code, the conviction of a defendant whose appeal has been dismissed and remanded for purposes of bringing a postconviction proceeding is a "final judgment of conviction" under Minn.Stat. § 524.2–803(f) unless the defendant has filed a petition for postconviction relief before the estate's motion to determine the finality of the conviction is heard. If the defendant has filed such a petition, the conviction is not a "final judgment of conviction" under Minn.Stat. § 524.2–803(f) until the appeal from the postconviction order is terminated or the time for appeal from that order has expired.

■ The record before us does not show the status of Gray's postconviction petition. Accordingly, we reverse the summary judgment on the issue of whether Gray feloniously and intentionally killed his wife and remand for further proceedings consistent with this opinion.

## II.

Gray argues that the district court erred in imposing a constructive trust on his one-half interest in the joint tenancy properties. We agree.[3]

Minn.Stat. § 524.2–803(b) provides:

**3.** Because this issue will arise on remand if the

district court determines that Gray feloniously

Any joint tenant who feloniously and intentionally kills another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as the decedent's property and the killer has no rights by survivorship. This provision applies to joint tenancies in real and personal property, joint accounts in banks, savings and loan associations, credit unions and other institutions, and any other form of coownership with survivorship incidents.

Minn.Stat. § 524.2–803(b) is similar to Unif.Probate Code § 2–803(b), 8 U.L.A. 172 (1983). Minn.Stat. § 524.2–803(b) gives effect to the policy that a person should not profit from his own wrong. *Thompson*, 281 Minn. at 557, 163 N.W.2d at 295; *Vesey v. Vesey*, 237 Minn. 295, 301, 54 N.W.2d 385, 388 (1952).

When one joint tenant kills another, Minn. Stat. § 524.2–803(b) provides only that the joint tenancy is severed and that the victim's share in the property passes to the victim's estate rather than to the killer by right of survivorship. Minn.Stat. § 524.2–803(b) deprives the killer of the right to take the victim's interest in the property by right of survivorship, but the statute does not require the killer to forfeit his own interest in the property outright or through imposition of a constructive trust. Instead, under the plain language of Minn.Stat. § 524.2–803(b), when one joint tenant feloniously and intentionally kills the other, the joint tenancy is severed and the victim's interest in the property passes to the victim's estate while the killer's interest remains with the killer. *See In re Estate of Matye*, 198 Mont. 317, 645 P.2d 955, 957–58 (1982) (statute similar to Unif.Probate Code § 2–803(b) required severance of joint tenancy and passage of one-half interest in resulting tenancy in common to decedent's estate and passage of other half-interest to murderer); *In re Estate of Snortland*, 311 N.W.2d 36, 37–38 (N.D.1981) (same).

Johnson argues the constructive trust was proper because it prevented Gray from being unjustly enriched by his crime. *See Vesey*,

237 Minn. at 302–05, 54 N.W.2d at 389–91 (under terms of contract that created joint bank account, killer was required to hold entire account in trust for decedent's heirs); *Spiess v. Schumm*, 448 N.W.2d 106, 108 (Minn.App.1989) (constructive trust may be imposed when it would be morally wrong for person to retain property).

▬ However, severance of a joint tenancy creates a tenancy in common. *Gau v. Hyland*, 230 Minn. 235, 238–39, 41 N.W.2d 444, 447 (1950).

A joint tenancy is distinguished from a tenancy in common by the fact that a surviving joint tenant succeeds to the person with whom he shared the joint tenancy.

*Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n*, 281 Minn. 462, 464, 161 N.W.2d 688, 690 (1968). A joint tenant has the right to unilaterally sever the joint tenancy at any time. *Id.* at 464–66, 161 N.W.2d at 690–91.

▬ Before his wife's death, Gray owned an undivided one-half interest in the properties as a joint tenant and had the right to sever the joint tenancies at any time. If Gray feloniously and intentionally killed his wife, Minn.Stat. § 524.2–803(b) applies and after the murder, Gray owned an undivided one-half interest in the properties but, as a tenant in common, he had no right of survivorship. Thus, under Minn.Stat. § 524.2–803(b), Gray had no greater interest in the properties after the murder than before and, in fact, had lost the right of survivorship. Because Gray acquired no property as a result of his wife's death, he was not enriched by her murder, and the district court improperly imposed a constructive trust on Gray's interest in the jointly owned properties. *See Matye*, 645 P.2d at 958 (as murderer always owned one-half interest in jointly held properties and had right to sever joint tenancy at any time, she did not gain any property due to murder; court therefore refused to impose constructive trust for benefit of victim's heirs on murderer's one-half interest in jointly owned properties). We therefore reverse

---

and intentionally killed his wife, we address it now in the interests of judicial economy. *See Midway Nat'l Bank v. Estate of Bollmeier*, 504

N.W.2d 59, 64 (Minn.App.1993) (court may address issue to serve interest of judicial economy).

the imposition of the constructive trust on Gray's interest in the jointly owned properties because imposing the trust was improper even if Gray feloniously and intentionally killed his wife.

 Johnson also argues that Minn.Stat. § 524.2–803(b) should be read in light of Minn.Stat. § 524.2–803(a), which provides that the victim's estate should pass as if the killer predeceased the victim. However, when "a statute contains general language and specific terms covering the subject matter thereof, the specific prevails over the general." *McCarthy v. State,* 280 Minn. 226, 231, 158 N.W.2d 708, 711 (1968). Minn.Stat. § 524.2–803(b) specifically governs the disposition of joint tenancy property when a joint tenant is killed by another joint tenant while Minn.Stat. § 524.2–803(a) governs the disposition of property in the victim's estate. Because Minn.Stat. § 542.2–803(b) specifically applies to joint tenancy property, it prevails over the general provisions of Minn.Stat. § 524.2–803(a). *See Snortland,* 311 N.W.2d at 38–39 (court would not construe statute similar to Unif.Probate Code § 2–803(b) in light of provision governing disposition of property in murder victim's estate because this construction would render express provision governing disposition of joint tenancy property ineffective).

### DECISION

Gray's conviction was not a final judgment of conviction for purposes of Minn.Stat. § 524.2–803(f) because his appeal from the judgment of conviction was pending when the summary judgment motion was heard and the dismissal of his appeal for purposes of seeking postconviction relief has the same effect as a stay. Thus, the district court erred in granting summary judgment on the issue of whether Gray feloniously and intentionally killed his wife. If Gray feloniously and intentionally killed his wife, he effected a severance of their joint tenancies so that his wife's interest in the resulting tenancies in common passed to her estate while he retained the other one-half interest in the properties. Under Minn.Stat. § 524.2–803(b), Gray owned no more property after the killing than before. Thus, Gray was not unjust-

ly enriched by the killing and the district court improperly imposed a constructive trust on Gray's one-half interest in the tenancies in common.

**Reversed and remanded.**