189 Cal.App.3d 407 (1987)
234 Cal. Rptr. 508
In re L.S., a Person Coming Under the Juvenile Court Law.
KERN COUNTY WELFARE DEPARTMENT, Plaintiff and Respondent,
v.
PATRICIA S. et al., Defendants and Appellants.
Docket No. F006666.
Court of Appeals of California, Fifth District.
February 2, 1987.
*408 COUNSEL
Peter C. Carton and Gregory M. Chappel, under appointments by the Court of Appeal, for Defendants and Appellants.
Bernard C. Barmann, County Counsel, Holly N. Brown and Patrick L. Enright, Deputy County Counsel, for Plaintiff and Respondent.
Richard B. Barron, under appointment by the Court of Appeal, for Minor.
*409 OPINION
VARTABEDIAN, J.[*]
On September 13, 1984, Kern County first filed a petition with the juvenile court claiming the minor came within the provisions of subdivisions (a) and (d) of section 300 of the Welfare and Institutions Code.[1] The supplemental petition filed March 21, 1985, alleged: "Said minor's home is an unfit place for him/her by reason of neglect, cruelty, depravity or physical abuse by either of his/her parents, or by his/her guardian or other person in whose custody or care he/she is; IN THAT:
"1. Said minor stated that he has observed his father unclothed and involved in sexual molestation of several unrelated minors.
"2. Said minor's father had been convicted on several counts of felony child molestation. The conviction is currently under appeal.
"3. Said minor states that he has been sexually molested by his father.
"4. Said minor states that he has been sexually molested by his mother."
Although the child was removed from the custody of the parents in September of 1984, the jurisdictional hearing did not commence until May of 1985; after the taking of some evidence the hearing was continued to October of 1985 and then concluded after a month's hiatus in November of 1985. The minor's father's criminal trial on molestation charges in late February and early March of 1985 resulted in the convictions alleged in the supplemental petition.
The trial court sustained the petition under section 300, subdivision (d), solely upon the basis of the father's convictions then on appeal. The juvenile court rejected the allegations against the minor's mother and, other than the conviction, found no independent grounds for sustaining the petition as to the father.
The juvenile court, at the dispositional hearing, returned the child to the physical custody of the mother if the father, out on appeal bond, agreed to reside elsewhere. Both parents filed timely notices of appeal from the juvenile court's rulings. We reverse the juvenile court's order sustaining the petition, confining our ruling to the unique circumstances presented herein.

*410 FACTS
Respondent Kern County Welfare Department (Department) presented the testimony of two minors, along with various other witnesses, attempting to prove the minor's parents sexually molested the minor and other children.
M.N., 10 at the time he testified at the hearing, had testified twice before: at the preliminary hearing of his parents and at the trial of the minor's father. At the section 300 hearing, he testified he had been molested by numerous people, including the minor's parents, on many occasions at many houses. He also testified he saw the minor's parents molest L.S.
In earlier testimony at other hearings, M.N. said he was molested only four times. All of the molestations occurred at one house only. Originally, neither of the minor's parents were accused; at the father's trial, no mention was made of the mother being there.
During the hearing in the instant matter in May of 1985, M.N. made one accusation which was shocking. He accused Cori Taylor, the Department worker who initially interviewed him, of having molested him and being present with the minor's father when he was molested.
The proceedings had a six-month break when questioning of M.N. resumed. Now, included in the list of his molesters is Sara Ryals, the deputy district attorney who prosecuted the father's case. The child then began to explain that Taylor and Ryals, among others, participated in the killing of babies at "bad churches," after which the babies were burned. The child explained he had not told about these things earlier out of fear.
Appellant Patricia S. had absented herself during the testimony of M.N. When M.N. was presented with a physical lineup containing Patricia S., he failed to pick her out.
The minor, L.S., also testified. He was shown two pictures of young girls  one he identified as Crystal; the other young girl as Melissa. He also was shown two pictures of houses from his neighborhood  he said Crystal lived in the first house and he had been inside; he said he never had been inside the second house.
The house he positively identified belonged to Melissa's parents; the second home belonged to Crystal's parents. L.S. said "bad things" happened to him inside "Crystal's house." When asked what bad things happened, he explained: "Put their front part in my back part"; "they" being his mother and father and Crystal's mother and father. This happened at "Crystal's" *411 house in the bedroom. It happened 10 times. Several children were there, not just L.S., including M.N. All the children were molested. "Crystal's" mother gave L.S. a white pill which made him go to sleep.
It was brought out on cross-examination that L.S. earlier had related he was given orange pills, not white. At his father's trial, he said his mother was not involved and that the "bad things" happened in the den, not the bedroom. The bulk of his cross-examination explored how the authorities "reminded him" of what had occurred. Also, on cross-examination, the child acknowledged he told one detective that he had eaten a baby's burnt hand and had drunk baby's blood, all connected with the "bad church."
Also testifying was an officer, Dennis Sterk, who took over investigation of the L.S. case in February of 1985. In the course of less than six months, there were six untaped interviews. It was to Sterk that L.S. revealed the things which happened at the "bad church." By the time Sterk interviewed L.S. about the "bad church," he had several other children's versions of events.
Officer Wahl, who was present at the first interview of L.S. in September of 1984, also testified. He related that Cori Taylor had conducted the questioning. At this initial interview, L.S. said Melissa's father had molested him and he had seen his father molest Melissa. These things had happened twice. The officer related that L.S. was not taken to have a physical examination. Indeed, no examination of the child, who told authorities he had been sodomized and had his penis bitten by a dog, took place until December of 1984 at the parent's behest. No positive physical evidence of molestation was found.
L.S. was unable to pick Melissa's father and mother out of lineups conducted in October of 1984. The home of Melissa's parents was the location where the "bad things" happened. Crystal's parents were never criminal suspects in these incidents.
The parents (appellants herein) presented several witnesses (neighbors, relatives and school personnel) who basically portrayed L.S. as a happy, gregarious, outgoing child who, prior to being removed from their custody, related well to his parents. The parents were concerned for their children and were involved in the activities and schooling not only of L.S., but his three older siblings. A family-nurse practitioner, who had given L.S. his preschool examination just two weeks before being taken from his parents, testified his demeanor was inconsistent with that of a sexually abused child.

DISCUSSION
(1a) The mother argues a nonfinal conviction is insufficient to support a dependency finding, especially when the juvenile court rejects independent *412 evidence of the claimed conduct which formed the basis for the conviction. We agree.
The case of In re Sonia G. (1984) 158 Cal. App.3d 18 [204 Cal. Rptr. 498], cited by appellants and distinguished by respondent, is instructive as a matter of background. In Sonia G., the trial court terminated the parental rights of a father, based on abandonment and cruel treatment (Civ. Code, § 232, subds. (a)(1), (2)), rejecting as a basis "[w]hose parent or parents are convicted of a felony, if the facts of the crime of which the parent or parents were convicted are of a nature so as to prove the unfitness of the parent...." (Civ. Code, § 232, subd. (a) (4).) Evidence was introduced of the father's convictions for violation of Penal Code sections 288a, subdivision (c), and 288, subdivision (a), the daughters being the victims, along with the fact that the convictions were on appeal at the time of the hearing. The welfare department challenged the rejection of subdivision (a) (4) as the basis for termination of cross-appeal. We affirmed the trial court's decision.
This court noted: "A judgment which is not yet final and may be reversed on appeal falls far short of the requirement of proof by clear and convincing evidence necessary to permanently sever a parental relationship.
"If the term `conviction' were to mean a mere finding of guilt, regardless of the outcome of an appeal, a child could be declared free from parental control, adopted, and then later claimed by the natural parent again after a ruling of reversal on said parent's criminal appeal. For instance, if a reviewing court determined that there had been insufficient evidence presented at a criminal prosecution and reversed the conviction on that ground, the defendant in that case could not be retried. [Citations.]
"We recognize the disadvantage of awaiting an affirmance on appeal before initiating a section 232, subdivision (a) (4) proceeding. However, it would appear that in a substantial number of cases in which a felony conviction of the type referred to in section 232, subdivision (a) (4) is pending appeal, the facts will be presented, as they were in this case, to declare the child free from parental custody and control based on one of the other subdivisions of section 232.
"We therefore conclude that the term `convicted' as used in section 232, subdivision (a) (4) is limited in application to a final judgment." (In re Sonia G., supra, 158 Cal. App.3d at pp. 23-24.)
Respondent appropriately points out that Sonia G. dealt with Civil Code section 232 and not Welfare and Institutions Code section 300 and the quantum of evidence is different under the two sections  clear and *413 convincing proof being required to terminate parental rights; a preponderance of the evidence being necessary to sustain jurisdiction under a section 300 petition. However, neither respondent nor minor's counsel cites an case where a judgment pending appeal has been found to supply substantial evidence on any issue.
(2) In California, a judgment which is not final is not usable for purposes of res judicata or collateral estoppel. A judgment "is not final for purposes of res judicata during the pendency of and until the resolution of the appeal." (Agarwal v. Johnson (1979) 25 Cal.3d 932, 954, fn. 11 [160 Cal. Rptr. 141, 603 P.2d 58].)
Likewise, where principles of res judicata do not apply, Evidence Code section 1300 permits: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissable by the heresay rule when offered in a civil action to prove any fact essential to the judgment...." (Italics added.) A judgment on appeal is not final. (See Cal. Rules of Court, rule 24.) (1b) Thus, the father's convictions on appeal would not be competent to prove the father was a child molester under either a theory of res judicata or Evidence Code section 1300.
(3) Minor's counsel argues that the parents' failure to make a hearsay objection below waived any deficiencies in the use of the conviction for purposes of Evidence Code section 1300. The criminal complaint and verdict forms (findings of guilty on counts 1 through 13 and 15 through 17, and no findings on 14 and 18) were moved into evidence before the first substantive witness was sworn. At that time, counsel for the mother stated: "Counts 14 and 18 are the only counts stipulated to [be] the subject of this petition."[2] County counsel disagreed but throughout the remainder of the case never argued that the conviction constituted proof of the allegation of molesting "unrelated minors." The judge admitted the documents into evidence qualifying: "I will make up my own mind as to what is relevant to the proceedings."
Although appellants made no specific hearsay objection, the record demonstrates not only the above stated general objection to admission of the convictions, but also argument by both parents' counsel below that the judgments of conviction, pending appeal, constituted insufficient evidence to support a jurisdictional finding. Significant was the judge's apparent deferral of ruling upon the relevancy issue which was decided only by inference when the court concluded the hearing by sustaining the petition against *414 the father based upon the criminal judgment. We therefore cannot say that there was a waiver of deficiencies in the use of the convictions.
(1c) With this background, we turn to the mother's claim.
Section 300, subdivision (d), provided at the time of the hearing:[3] "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:
".... .... .... .... ....
"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
In making its findings, the juvenile court stated: "As to the father, Mr. S[.], I find only that it has been proved and clearly proved that he has been convicted of several counts of child molestation. That I think is beyond argument. I recognize that that case is on appeal, but for the present time he does stand convicted. I therefore sustain the petition as to 300(d) on that ground." Clarifying the basis of this finding, the court made informal comments. As to the conviction, it stated: "But in this case we have the situation where the defendant stands convicted, or rather the parent, Mr. S[.], stands convicted by a jury of twelve people who are convinced apparently beyond a reasonable doubt."
The court used the nonfinal convictions for their hearsay value; Evidence Code section 1300 provides that to fall under the exception to the rule of inadmissibility of hearsay evidence (Evid. Code, § 1200), such judgments must be final. While the juvenile court could take judicial notice of the convictions (Evid. Code, §§ 452, 453), admittedly on appeal, it cannot use them to support a finding that appellant molested children. And, the barren fact the father suffered a conviction which was on appeal, without more, does not support a finding of depravity and unfitness of the home. (Compare In re Van Vlack (1947) 81 Cal. App.2d 838, 841-842 [185 P.2d 346].)
Any remote evidentiary value of the nonfinal convictions here was undercut by the juvenile court's rejection of the Department's indepedent evidence. It was the father's molestation of these unrelated minors which formed the basis of his convictions. The Department presented several witnesses, most notably the two minors, M.N. and L.S., to substantiate the allegation that the father molested unrelated minors. The minors were the only eyewitnesses presented at the hearing. The court necessarily rejected *415 the minor's testimony in finding the Department had failed to prove the allegations by a preponderance of the evidence.
Additionally, the court found a failure of proof on the allegations that the mother and father molested the subject minor.
As the court in In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1132-1133 [200 Cal. Rptr. 789], noted: "We have ruled inadmissible some of the evidence which the trial judge may have used in reaching a decision in this case. But this will frequently happen when no objections are lodged against potentially inadmissible proof during the course of the proceedings. The trial court will not have the opportunity to sort out the admissible from the inadmissible and may indeed take into consideration some items of evidence which it would have excluded if the evidentiary issues had been raised and argued in a timely fashion. However, under Welfare & Institutions Code, sections 355 and 701, our role as a reviewing court is not to reverse judgments where they may have been based in part on excludable evidence. Rather our duty is to strip away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding."
The lower court here found admissible evidence insufficient to sustain the petition, basing its findings solely upon inadmissible evidence. We therefore rule that the findings of the court were not sustained by substantial evidence.
In light of this ruling, we find it unnecessary to discuss the claims of petition deficiency and county counsel conflict of interest.
The order is reversed.
Franson, Acting P.J., and Best, J., concurred.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Counts 14 and 18 were the only charges that the father personally molested the minor. At the father's trial, the minor denied that either his father or mother molested him.
[3] Section 300 was amended by Statutes 1985, chapter 1548, section 1.