[No. F049876. Fifth Dist. Oct. 31, 2007.]

PRINCIPAL LIFE INSURANCE COMPANY, Plaintiff, v.
SCOTT L. PETERSON, Defendant and Appellant;
SHARON ROCHA, as Administrator, etc., Defendant and Respondent.

## COUNSEL

Geragos & Geragos, Matthew J. Geragos and Eugene Patterson Harris for Defendant and Appellant.

Moorad, Clark & Stewart and Adam J. Stewart for Defendant and Respondent.

## OPINION

**ARDAIZ, P. J.**—Probate Code section 252 provides that when the named beneficiary of a life insurance policy "feloniously and intentionally kills" the person whose life is insured, the beneficiary "is not entitled to any benefit under the . . . policy . . . , and it becomes payable as though the killer had predeceased the decedent." (*Ibid.*) Appellant is the named beneficiary of a $250,000 life insurance policy insuring the life of his late wife, Laci Peterson. On November 12, 2004, a jury found appellant guilty of the first degree murder of Laci Peterson, and on March 16, 2005, the San Mateo County Superior Court entered a commitment judgment of death in appellant's criminal trial. That judgment is presently on appeal in the California Supreme Court.

The present appeal is from a judgment in a civil action awarding the life insurance proceeds to the Estate of Laci Peterson (the Estate).[1] The insurer, Principal Life Insurance Company (Principal), brought an interpleader action (see Code Civ. Proc., § 386) alleging that both appellant and the Estate claimed to be entitled to the life insurance proceeds. Principal asked for an order discharging it from any liability to appellant or to the Administrator of the Estate, and directing appellant and the Administrator to litigate between themselves their claims to the proceeds of the life insurance policy. Principal, appellant and the Administrator stipulated to the entry of such an order. The insurance policy proceeds were deposited with the clerk of the Superior Court of Stanislaus County, and Principal was dismissed from the action.

The Administrator then moved for summary judgment. She asked the court to take judicial notice of appellant's criminal conviction. The court did so, without objection. Appellant opposed the motion by arguing that "[t]he evidence in the Request for Judicial Notice presented by the Estate utterly

---

[1] The parties appear to use the terms "the Estate" and "the Administrator" interchangeably. " 'A probate or trust estate is not a legal entity; it is simply a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an action. Any litigation must be maintained by, or against, the executor or administrator of the estate.' " (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1344 [7 Cal.Rptr.3d 178].) The respondent here is thus the Administrator (Sharon Rocha).

fails to meet the requisite burden of proof." Appellant relied on subdivision (b) of Probate Code section 254, which states: "In the absence of a final judgment of conviction of felonious and intentional killing, the court may determine by a preponderance of the evidence whether the killing was felonious and intentional for purposes of this part. The burden of proof is on the party seeking to establish that the killing was felonious and intentional for the purposes of this part." (Prob. Code, § 254, subd. (b).) The only additional evidence presented by appellant was a declaration from his attorney stating that appellant's criminal conviction was on appeal.

The superior court granted the Administrator's motion for summary judgment. Its order granting the motion stated that the Administrator "has established, by a preponderance of the evidence, that [appellant] did feloniously and intentionally murder his wife, Laci D. Peterson, and as such he is not entitled to collect the benefits of her life insurance policy." The court then entered a judgment directing the clerk of the Stanislaus County Superior Court to pay to the Administrator the life insurance proceeds Principal had deposited with the clerk.

## APPELLANT'S CONTENTION

■ On his appeal from this judgment appellant again argues that the Administrator failed to meet her burden under Probate Code section 254, subdivision (b) to show that appellant feloniously and intentionally killed the decedent. As we shall explain, we agree with the trial court that in the absence of any conflicting evidence, appellant's criminal conviction for the first degree murder of his wife was substantial and uncontradicted evidence that he feloniously and intentionally killed her. Summary judgment was therefore properly granted in favor of the Administrator.

## FACTS

The Administrator's motion presented the following facts, which were not disputed by appellant. Principal issued a "flexible premium variable universal life" insurance policy dated June 25, 2001, in the face amount of $250,000. The policy named Laci Peterson as the insured and appellant as the beneficiary. In November of 2004 a jury found appellant guilty of murdering Laci Peterson.

Appellant's opposition to the motion presented a September 8, 2005 declaration of his attorney, Mark J. Geragos, stating that appellant's criminal conviction was on appeal.

In support of the motion the Administrator filed a request for judicial notice asking the court to take judicial notice of certain documents from appellant's criminal case (Super. Ct. San Mateo County, 2004, No. SC55500). These were certified copies of (1) the jury's December 13, 2004 penalty verdict fixing appellant's penalty at death; (2) the jury's November 12, 2004 verdict finding appellant guilty of the first degree murder of Laci Peterson; (3) the jury's November 12, 2004 verdict finding to be true the special circumstance that appellant "has in this case been convicted of at least one crime of murder of the first degree and one or more crimes of murder of the first or second degree"; (4) the jury's November 12, 2004 verdict finding appellant guilty of the murder of baby Conner Peterson; (5) the court clerk's minutes of the March 16, 2005 proceedings (at which appellant was sentenced to death); and (6) the court's March 16, 2005 "Commitment Judgment of Death." As we have already mentioned, the court did take judicial notice of these documents, without any objection from appellant.

## SUMMARY JUDGMENT

On appellate review of an order granting summary judgment "we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action. [Citation.]" (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; accord, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant . . . showed the opponent could not prevail on any theory raised by the pleadings. Third, *if the movant has met its burden*, we consider whether the opposition raised triable issues of fact." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939–940 [51 Cal.Rptr.3d 1]; see also *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 849–855; Code Civ. Proc., § 437c.)

## INTERPLEADER

This action is an interpleader action brought by Principal. "Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are

such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." (Code Civ. Proc., § 386, subd. (b).) "When a person may be subject to conflicting claims for money or property, the person may bring an interpleader action to compel the claimants to litigate their claims among themselves. (Code Civ. Proc., § 386, subd. (b).) Once the person admits liability and deposits the money with the court, he or she is discharged from liability and freed from the obligation of participating in the litigation between the claimants. [Citations.] The purpose of interpleader is to prevent a multiplicity of suits and double vexation. [Citation.]" (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1122 [84 Cal.Rptr.2d 361], fn. omitted.)

■ "In an interpleader action, the court initially determines the right of the plaintiff to interplead the funds; if that right is sustained, an interlocutory decree is entered which requires the defendants to interplead and litigate their claims to the funds. Upon an admission of liability and deposit of monies with the court, the plaintiff may then be discharged from liability and dismissed from the interpleader action. [Citations.] The effect of such an order is to preserve the fund, discharge the stakeholder from further liability, and to keep the fund in the court's custody until the rights of potential claimants of the monies can be adjudicated. [Citations.] Thus, the interpleader proceeding is traditionally viewed as two lawsuits in one. The first dispute is between the stakeholder and the claimants to determine the right to interplead the funds. The second dispute to be resolved is who is to receive the interpleaded funds. [Citations.]" (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42–43 [12 Cal.Rptr.3d 711]; see also 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 216–237, pp. 280–298; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶¶ 2:470 to 2:497, pp. 78–85.)

The first phase of this interpleader action was resolved by an order, stipulated to by all parties, that Principal be discharged from any liability to either of the defendants and dismissed from the action, and that appellant and the Administrator "will settle or litigate amongst themselves the [*sic*] respective rights and claims to proceeds under the Policy . . . ." (See also *Union Mutual Life Ins. Co. v. Broderick* (1925) 196 Cal. 497 [238 P. 1034] [interpleader action brought by insurance company when both widow and sister of decedent claimed entitlement to life insurance proceeds].)

■ "When the right of interpleader and discharge has been established . . . , the trial of the issues between the conflicting claimants proceeds on the original and any additional pleadings deemed necessary." (4 Witkin,

Cal. Procedure, *supra*, Pleading, § 234, p. 296.) In this case appellant and the Administrator each answered Principal's complaint in interpleader. Apparently no other pleadings were deemed necessary. (None appear in the record on appeal.) The Administrator's answer to Principal's complaint in interpleader admitted paragraphs 13 and 14 of that complaint. These paragraphs alleged: "13. If Peterson is convicted of murdering the Decedent, he will be ineligible to receive the life insurance proceeds because Peterson will be treated as having predeceased the Decedent pursuant to Probate Code section 252. [¶] 14. In the event that Peterson is treated as having predeceased the Decedent, the life insurance proceeds will be payable to the Estate pursuant to the terms of the Policy." Principal's complaint in interpleader was filed before appellant's criminal conviction, but alleged that appellant had been arrested and charged with the murder of Laci Peterson. It alleged that appellant was the designated beneficiary of the policy, that Principal was obligated to pay the proceeds of the policy, and that due to Principal's uncertainty over the possible applicability of Probate Code section 252, Principal "does not know and cannot determine to whom the proceeds of the Policy rightfully should be paid." Appellant's answer to Principal's complaint in interpleader asserted that appellant "is entitled to the proceeds of the insurance policy as set forth in the Complaint in Interpleader."

The second sentence of subdivision (b) of Probate Code section 254 states: "The burden of proof is on the party seeking to establish that the killing was felonious and intentional for the purposes of this part." The parties are in agreement that the Administrator bears the burden of proving that appellant feloniously and intentionally killed Laci Peterson. Meeting that burden would entitle the Administrator to the life insurance proceeds. Here the Administrator attempted to demonstrate, on a motion for summary judgment, that undisputed evidence showed a felonious and intentional killing of Laci Peterson by appellant. (See also *City of Morgan Hill v. Brown*, *supra*, 71 Cal.App.4th 1114 [summary judgment procedure utilized by one of two claimants on second phase of interpleader action].)

## I.

## A CONVICTION ON APPEAL IS NOT A "FINAL JUDGMENT OF CONVICTION" FOR PURPOSES OF PROBATE CODE SECTION 254

Probate Code section 252 states in its entirety: "A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the

policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent."

Probate Code section 254 states in its entirety:

"(a) A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this part.

"(b) In the absence of a final judgment of conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this part. The burden of proof is on the party seeking to establish that the killing was felonious and intentional for the purposes of this part."

The Administrator contended in the superior court, and contends again on this appeal, that (1) there was a "final judgment of conviction of felonious and intentional killing" within the meaning of subdivision (a) of Probate Code section 254, and (2) if there was no such "final judgment," the nonfinal judgment of conviction was undisputed evidence showing "by a preponderance of evidence" (Prob. Code, § 254, subd. (b)) a felonious and intentional killing of Laci Peterson by appellant. The superior court rejected the Administrator's first argument, but accepted the second. In our view, the superior court correctly interpreted subdivision (a) and, on the evidence presented to it, correctly applied subdivision (b).

█ As to the meaning of the phrase "final judgment of conviction" in Probate Code section 254, we apply well-established rules of statutory construction. The objective of statutory construction is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "The words of the statute are the starting point." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "If the language permits more than one reasonable interpretation, . . . the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977.) We "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general

purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

Application of these rules leads us to the conclusion that the phrase "final judgment of conviction" in Probate Code section 254 does not include a judgment that is on appeal. The language of the phrase permits more than one reasonable interpretation. The words could be read to mean a judgment which has been affirmed on appeal (see, e.g., *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954, fn. 11 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 575, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944] [a "judgment . . . is not final for purposes of res judicata during the pendency of and until the resolution of the appeal"]), or a judgment which is final in the trial court and from which an appeal is pending. In 1983 the Legislature enacted as Probate Code former section 204 the statute that now appears as Probate Code section 254, except that in the 1983 legislation, subdivision (b) of the statute began with the words "[i]n the absence of a conviction of" instead of "[i]n the absence of a final judgment of conviction of." (Stats. 1983, ch. 842, § 22, p. 3029.) Amendments to the Probate Code in 1984 renumbered the section as section 254, but left the language unchanged. (Stats. 1984, ch. 527, § 1, p. 2084 & § 3, p. 2086.) In 1989, subdivision (b) of section 254 was amended to add the reference to a "final judgment of" conviction of felonious and intentional killing. (Stats. 1989, ch. 21, § 2, p. 73.) In 1990 the entire Probate Code was repealed and a new Probate Code was enacted. (Stats. 1990, ch. 79, § 14, p. 463.) This was done upon the recommendation of the California Law Revision Commission. (See Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) pp. 1001, 1005–1006.) The new Probate Code made no change to section 254. (Stats. 1990, ch. 79, § 14, p. 463.) The California Law Revision Commission comment to Probate Code section 254 of the 1990 legislation states in pertinent part: "Section 254 was amended by 1989 Cal.Stat. ch. 21 § 2 to add the words 'a final judgment of' in subdivision (b). This made clear that the civil court may determine the issue by the civil standard of proof during the pendency of an appeal from a criminal conviction of felonious and intentional killing." (Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code (2002 ed.) foll. § 254, p. 189.) The California Law Revision Commission comment to section 254 thus appears to leave no doubt that the phrase "a final judgment of conviction" was intended to exclude a criminal conviction that is on appeal.

The California Law Revision Commission comment to section 254 also states that "[t]his section is the same in substance as Section 2-803(e) of the Uniform Probate Code (1987)." (Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code, *supra*, foll. § 254, p. 189.) Probate Code section 2, subdivision (b), states that a "provision of this code, insofar as it is the same

in substance as a provision of a uniform act, shall be so construed as to effectuate the general purpose to make uniform the law in those states which enact that provision." In *Johnson v. Gray* (Minn.Ct.App. 1995) 533 N.W.2d 57, Minnesota's version of Uniform Probate Code section 2-803 stated in pertinent part that " '[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section.' " (*Johnson v. Gray, supra*, 533 N.W.2d at p. 60.) Thomas Gray was convicted and sentenced for the second degree murder of his wife. He was the primary beneficiary of his wife's $10,000 life insurance policy. The wife's father, Wayne Johnson, was appointed personal representative of her estate. Johnson sought a declaratory judgment that Gray was divested of Gray's right to the life insurance proceeds because Gray had feloniously and intentionally killed the wife. "Johnson brought a summary judgment motion, arguing Gray's conviction for second degree murder was conclusive evidence that he had feloniously and intentionally killed his wife. Gray argued his murder conviction was not final because he had appealed and his appeal still was pending." (*Johnson v. Gray, supra*, 533 N.W.2d at p. 59.) The Minnesota district court granted the summary judgment motion. The appellate court reversed. "[The statute] does not define 'final judgment of conviction.' Generally, a judgment becomes final when the appellate process is terminated or the time for appeal has expired. [Citation.] Under this general rule, Gray's conviction would be final only when the direct appeal from his conviction has been terminated or the time for appeal has expired. Because Gray's direct appeal from the judgment of conviction was pending when the summary judgment motion was heard, Gray's conviction was not final and the district court erred in granting summary judgment on the issue of whether Gray feloniously and intentionally killed his wife." (*Id.* at p. 60, fn. omitted.) The phrase "final judgment of conviction" has thus been construed in Minnesota as not including a judgment that is on appeal. We are aware of no contrary construction of this Uniform Probate Code language. We therefore agree with the superior court, and with appellant, that the Administrator did not here demonstrate the existence of a final judgment of conviction as the term "final judgment" is used in Probate Code section 254.

## II.

### A CONVICTION ON APPEAL MAY CONSTITUTE SUBSTANTIAL EVIDENCE OF A FELONIOUS AND INTENTIONAL KILLING FOR PURPOSES OF PROBATE CODE SECTIONS 252 AND 254

This brings us to the second issue: whether the nonfinal judgment of first degree murder, not rebutted by any evidence that appellant did not feloniously and intentionally murder his wife, constitutes sufficient evidence to

warrant the granting of the Administrator's summary judgment motion under subdivision (b) of Probate Code section 254.

As we have already discussed, subdivision (b) of Probate Code section 254 placed on the Administrator the burden of proving, by a preponderance of evidence, that appellant feloniously and intentionally killed Laci Peterson. For summary judgment purposes, the Administrator on this interpleader action was thus the functional equivalent of a plaintiff moving for summary judgment. "[I]f a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law* . . . ." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 851; see also Code Civ. Proc., § 437c, subd. (p)(1).) If the judgment of first degree murder meets this test, then we have a situation in which appellant would be required to present some evidence that he did not feloniously and intentionally kill Laci Peterson. Absent such evidence, there would be no factual dispute to take to a trial. If a party moving for summary judgment "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.)

## A. *Evidence Code Section 1300*

██ What is the evidentiary significance, then, of a judgment of conviction in a criminal case? Evidence Code section 1300 states: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment whether or not the judgment was based on a plea of nolo contendere." We have already concluded that a "final judgment of conviction of felonious and intentional killing" within the meaning of Probate Code section 254 does not include a judgment of conviction from which an appeal is pending. We reached this conclusion by applying settled rules of statutory construction to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at p. 387.) But does a "final judgment adjudging a person guilty of a crime punishable as a felony," within the meaning of Evidence Code section 1300, similarly exclude a judgment of conviction from which an appeal is pending? Application of these same rules of statutory construction leads us to the conclusion that it does not. In other words, the Evidence Code section 1300 phrase "final judgment adjudging a person guilty of a crime punishable as a felony" includes a judgment adjudging a person guilty of a crime punishable as a felony even when an appeal from that judgment is pending.

Once again, the term "final judgment" is susceptible of more than one reasonable interpretation. "[W]hile it is pending on appeal a judgment is both 'final' in the sense that it is appealable and not 'final' in the sense that the appeal remains unresolved." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781].) Indeed, since its 1872 enactment Penal Code section 1237 has stated that "[a]n appeal may be taken by the defendant: [¶] . . . [f]rom a final judgment of conviction . . . ." Evidence Code section 1300 was enacted in 1965 when the Legislature enacted the California Evidence Code. (Stats. 1965, ch. 299, § 2, p. 1297, operative Jan. 1, 1967.) "The California Law Revision Commission was directed" by the Legislature in 1956 "to make a study 'to determine whether the law of evidence should be revised to conform to the Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws and approved by it at its 1953 annual conference.'" (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 3 (hereinafter 7 California Law Revision Commission).) The legislation recommended by the commission consisted of "(1) a proposed Evidence Code that includes the best features of the Uniform Rules and of the existing California law and (2) the necessary conforming adjustments in existing statutory law." (*Ibid.*)

"For each recommended Evidence Code section, the Commission provided a *Comment* which explained the section's purpose and its relation to other sections and discussed some potential problems of its meaning or application." (7 Cal. Law Revision Com., *supra,* at p. 1007.) The Legislature made some changes to the proposed Evidence Code, and then enacted the code. (7 Cal. Law Revision Com., pp. 923–928, 1007–1008.) For those sections of the recommended Evidence Code changed by the Legislature, the Law Revision Commission comment was modified accordingly and relabeled as a comment by the legislative committee that authored the comment. (7 Cal. Law Revision Com., at p. 1008.) (See, e.g., Assem. Com. on Judiciary com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 310, p. 48.) The end result was that the comment accompanying any given Evidence Code section was intended to reflect legislative intent in enacting the section.

As originally enacted in 1965, Evidence Code section 1300 stated: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment unless the judgment was based on a plea of nolo contendere." (See 7 Cal. Law Revision Com., *supra,* pp. 254–255.) This language was recommended by the Law Revision Commission and was not changed prior to its enactment into law. (*Id.* at pp. 1, 254–255, 1001, 1007, 1251–1252.) The Law Revision Commission comment to Evidence Code section 1300 pointed out that this section effected a change in California law: "Section 1300 will change the California law. Under

existing law, a conviction of a crime is inadmissible as evidence in a subsequent action. Marceau v. Travelers' Ins. Co., 101 Cal. 338 35 Pac. 856 (1894) (evidence of a murder conviction held inadmissible to prove the insured was intentionally killed); Burke v. Wells, Fargo & Co., 34 Cal. 60 (1867) (evidence of a robbery conviction held inadmissible to prove the identity of robber in an action to recover reward). The change, however, is desirable, for the evidence involved is peculiarly reliable. The seriousness of the charge assures that the facts will be thoroughly litigated, and the fact that the judgment must be based upon a determination that there was no reasonable doubt concerning the defendant's guilt assures that the question of guilt will be thoroughly considered." (Cal. Law Revision Com. com., reprinted at 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1300, p. 397.)

This change essentially adopted the view of rule 63(20) of the Uniform Rules of Evidence, but with an accommodation for the then existing language in Penal Code section 1016 that a nolo contendere plea "may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (Stats. 1963, ch. 2128, § 1, p. 4418.) Rule 63(20) of the Uniform Rules of Evidence (Uniform Rules) approved in 1953 by the National Conference of Commissioners on Uniform State Laws stated:

"Rule 63. *Hearsay Evidence Excluded—Exceptions.* Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except: [¶] . . . [¶]

"(20) *Judgment of Previous Conviction.* Evidence of a final judgment adjudging a person guilty of a felony, to prove any fact essential to sustain the judgment."

The differences we see between Uniform Rule 63(20) and the original Evidence Code section 1300 are (1) the Uniform Rule used the phrase "guilty of a felony" whereas Evidence Code section 1300 used the phrase "guilty of a crime punishable as a felony"; (2) the Uniform Rule used the phrase "to prove any fact essential to sustain the judgment" whereas Evidence Code section 1300 used the phrase "to prove any fact essential to the judgment"; (3) Evidence Code section 1300 added the phrase "unless the judgment was based on a plea of nolo contendere"; and (4) the Uniform Rule appears to have applied to the use of the described final judgment in any subsequent court proceeding (civil or criminal), whereas Evidence Code section 1300 limited its application to use of the described final judgment "when offered in a civil action"; and (5) stylistically, the Uniform Rules of Evidence placed the hearsay rule and its exceptions in one rule with many subsections, whereas in

the Evidence Code the hearsay rule (see Evid. Code, § 1200) and its many exceptions (see Evid. Code, § 220 et seq.) are placed in separate statutes.

The first difference was explained in the Law Revision Commission comment to Evidence Code section 1300 as follows: "Section 1300 applies to any crime punishable as a felony. The fact that a misdemeanor sentence is imposed does not affect the admissibility of the judgment of a conviction under this section." (Cal. Law Revision Com. com., reprinted at 29B pt. 4 West's Ann. Evid. Code, *supra*, foll. § 1300, p. 397.) Witkin explained this difference between the Uniform Rule and Evidence Code section 1300 a bit more clearly. "Only *felony* convictions come within [Evidence Code, section 1300]. . . . [T]he Evidence Code followed the Uniform Rule, with this difference: The test is whether the crime was 'punishable' as a felony, i.e., whether it comes within the class of felonies or felony-misdemeanors. Certain crimes are punishable either as felonies or misdemeanors, and as to those crimes the judgment of conviction is admissible even though the sentence is for the misdemeanor." (1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 272, p. 989.) The second difference appears to be one of style and not of substance. The third, as we have explained, harmonized Evidence Code section 1300 with Penal Code section 1016. The fourth appears to have been an accommodation to concerns about protecting the Sixth Amendment right of an accused in a criminal case "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) (See 1 Witkin, Cal. Evidence, *supra*, Hearsay, § 272, pp. 988–989.) The fifth was a result of the Law Revision Commission's expressed desire to improve upon what it deemed to be the "cumbersome" and "defective" draftsmanship of the Uniform Rules of Evidence. "[T]he draftsmanship of the Uniform Rules is in some respects defective by California standards. The Uniform Rules contain several rules of extreme length that are reminiscent of several of the cumbersome sections in [part IV of the 1872 Code of Civil Procedure pertaining to the law of evidence]. For example, the hearsay rule and all of its exceptions are stated in one rule that has 31 subdivisions." (7 Cal. Law Revision Com., *supra*, at p. 33; see also *id.* at pp. 29–30.)

B.  *A Felony Conviction on Appeal Is a "Final Judgment Adjudging a Person Guilty of a Crime Punishable as a Felony" for Purposes of Evidence Code Section 1300*

In sum, and in general, Evidence Code section 1300 changed the previous California rule of inadmissibility of prior convictions to a rule of admissibility of prior felony convictions (in civil cases), in accordance with Uniform Rule 63(20) but with the changes just noted above. The language "Evidence of a final judgment adjudging a person guilty," however, was adopted unchanged from Uniform Rule 63(20). We see no reasonable conclusion other

than that this language was intended to have the same meaning in Evidence Code section 1300 that it had in Uniform Rule 63(20). And as we shall explain, we see several indicia that this language was intended to refer to a judgment that was "final" in the trial court (even if the judgment was on appeal), and not merely to a judgment that has been affirmed on appeal or a judgment from which a timely appeal may still be taken.

First, the drafters' comment to Uniform Rule 63(20) contains no hint that a judgment on appeal would not qualify for admission. That comment states in pertinent part: "Analytically a judgment of conviction is hearsay and for that reason rejected by the majority of courts when offered to prove the defendant's guilt in another action in which the issue of guilt is material. Where a person has had an opportunity to defend himself and has entered . . . a plea of guilty or has been found guilty beyond a reasonable doubt, *the judgment entered on the plea or verdict would seem to have sufficient value to be worth consideration by a trier of fact, and necessarily includes a finding of all facts essential to sustain the judgment in the case in which rendered.*" (Nat. Conference Comrs. on U. State Laws, Uniform Rules of Evidence (1953), com. to rule 63(20) p. 206, italics added.)

Second, and most importantly, when the Uniform Rules were updated in 1974, the hearsay exception for a "final judgment . . . adjudging a person guilty of" a felony was redesignated as Uniform Rule 803(22) and added a sentence expressly providing that "[t]he pendency of an appeal may be shown but does not affect admissibility." (13F West's U. Laws Ann. (1974) U. Rules Evid., rule 803(22) p. 282.) If the term "final judgment" in the 1953 Uniform Rule 63(20) had been meant to include only a judgment affirmed on appeal or no longer subject to a timely appeal, and if the new last sentence in the 1974 Uniform Rule 803(22) expressly applying this hearsay exception to felony convictions with pending appeals had been intended to be an expansion of the 1953 Uniform Rule 63(20) hearsay exception, then the drafters of the 1974 Uniform Rule 803(22) presumably would have removed the word "final" from the phrase "final judgment . . . adjudging a person guilty" in the first sentence of subpart (22). They did not. Apparently this is because the term "final judgment" in 1953 Uniform Rule 63(20) was intended all along to mean a judgment that was final in the trial court. The California Law Revision Commission (and later the California Legislature) presumably meant the same thing when they took the words "Evidence of a final judgment adjudging a person guilty" from 1953 Uniform Rule 63(20) and placed them in Evidence Code section 1300.

Third, the California Law Revision Commission comment to Evidence Code section 1300 contains no suggestion that the commission or the Legislature intended the words "final judgment adjudging a person guilty" in

Evidence Code section 1300 to mean only a judgment that has been affirmed on appeal or that is no longer subject to a timely appeal. The comment states in part: "[I]f a plaintiff sues to recover a reward offered by the defendant for the arrest and conviction of a person who committed a particular crime, Section 1300 permits the plaintiff to use a judgment of conviction as evidence that the person convicted committed the crime." (Cal. Law Revision Com. com., reprinted at 29B pt. 4 West's Ann. Evid. Code, *supra*, foll. § 1300, p. 396.) The comment contains no suggestion that the plaintiff must wait until the criminal conviction is affirmed on appeal before that "judgment of conviction" may be admitted in the civil action to recover the reward. The comment also states, as we have already pointed out: "Section 1300 will change the California law. Under existing law, a conviction of a crime is inadmissible as evidence in a subsequent action. . . . The change, however, is desirable, for the evidence involved is particularly reliable. The seriousness of the charge assures that the facts will be thoroughly litigated, and the fact that the judgment must be based upon a determination that there was no reasonable doubt concerning the defendant's guilt assures that the question of guilt will be thoroughly considered." (*Id.* at p. 397, citation omitted.) The "determination that there was no reasonable doubt concerning the defendant's guilt" (*ibid.*) is made in the trial court by the trier of fact (or upon the defendant's plea). An appellate court makes no such determination. The comment to Evidence Code section 1300 makes express reference to the comment (already quoted above) to rule 63(20) of the 1953 Uniform Rules of Evidence. As we have already explained, Uniform Rule 63(20) appears to have made admissible a felony conviction judgment even if that judgment was on appeal. The comment also makes an express reference to a "Study Relating to the Uniform Rules of Evidence" that was "prepared by [the Commission's] research consultant, Professor James H. Chadbourn of the School of Law, University of California at Los Angeles." (6 Cal. Law Revision Com. Rep. (1964) appen., p. 303; see also *id.*, appen., pp. 401–619.) This study explains the rationale of 1953 Uniform Rule 63(20). It too contains no hint or suggestion that a "final judgment adjudging a person guilty of a felony" must be a judgment that has been affirmed on appeal or is no longer appealable. The study states in part:

"If we think of the jury's statement as the very special kind of statement that it is, this hurdles the hearsay objection. It also circumvents the knowledge and opinion objections. Under these peculiar circumstances, want of prior knowledge is here a positive virtue. Under the same circumstances it is peculiarly appropriate that the statement be in the form of a conclusion.

"In short, the statement of a jury embodied in its verdict is *sui generis*. It stands apart from other kinds of written and oral statements. Because of this uniqueness, the usual principles applicable to ordinary statements (right of cross-examination, knowledge, opinion) may appropriately be regarded as inapplicable to the jury's statement.

"If we now enlarge our point of view to think of the problem in less technical terms than hearsay, knowledge and opinion, we discover that there is no plausible objection to admitting the judgment as evidence against the convicted party on the point of weight of the evidence or on the point of fairness to that party. The judgment possesses great probative force, since it manifests persuasion of the jury beyond a reasonable doubt. The convicted party has had his day in court. Assuming the criminal charge was serious enough to motivate him to put forth his best efforts and to motivate the jury to put forth their best efforts, no unfairness results in using the judgment as evidence against him in another case. These assumptions are clearly sound when the criminal charge was a felony." (6 Cal. Law Revision Com. Rep., *supra*, appen., at p. 540.) The judgment that "manifests persuasion of the jury beyond a reasonable doubt" is the trial court's judgment, not an appellate court's affirmance of that judgment.

Fourth, with but one exception (which we will address shortly), we see nothing in the development of the law pertaining to the admission of prior felony convictions that would suggest to us that California's enactment of Evidence Code section 1300 was intended to allow into evidence only felony conviction judgments that have been affirmed on appeal or are no longer subject to appeal. McCormick on Evidence (6th ed. 2006) discusses in volume 2, chapter 30, section 298, the development of this area of law. Although various common limitations (in different courts and jurisdictions) of this hearsay exception are mentioned (e.g., it covers only prior criminal judgments of conviction, not prior civil judgments; it covers only serious crimes; it does not apply to judgments of acquittal; it does not [in some courts and jurisdictions other than California] cover judgments resulting from a plea of nolo contendere), no mention is made there of any limitation on criminal judgments of conviction that are on appeal. Rule 803(22) of the Federal Rules of Evidence (28 U.S.C.) is comparable to Uniform Rule 803(22) and California Evidence Code section 1300. It too uses the phrase "Evidence of a final judgment . . . adjudging a person guilty of." It too allows admissibility of a felony conviction judgment that is on appeal. Thus even the federal rule uses the term "final judgment" to mean a judgment that is final in the trial court. We also note that when Evidence Code section 1300 was enacted in 1965, even appeals in civil cases were taken from "a final judgment" pursuant to Code of Civil Procedure former section 963. (See *Maier Brewing Co. v. Pacific Nat. Fire Ins. Co.* (1961) 194 Cal.App.2d 494, 497 [15 Cal.Rptr. 177]; *Sullivan v. Delta Air Lines, Inc., supra,* 15 Cal.4th at p. 304.) In 1968 this statute was repealed and replaced with Code of Civil Procedure section 904.1, which now provides that an appeal may be taken "From a judgment." (Code Civ. Proc., § 904.1, subd. (a)(1); see also Stats. 1968, ch. 385, p. 811.)

We now turn to the one exception of which we spoke in the previous paragraph. This court, in *In re L.S.* (1987) 189 Cal.App.3d 407 [234 Cal.Rptr. 508], dealt with an appeal by the parents of a child who had been found by the juvenile court to be a dependent child of the court under Welfare and Institutions Code section 300, subdivision (d). The statute provided in pertinent part that a person under the age of 18 years came within the jurisdiction of the juvenile court if the person's " 'home is an unfit place for him by reason of . . . depravity . . . of either of his parents . . . .' " (*In re L.S., supra*, 189 Cal.App.3d at p. 414.) The juvenile court relied solely on evidence that the child's father had been "convicted of several counts of child molestation" to sustain the dependency petition. (*Ibid.*) The victims in the criminal case were " 'unrelated minors' " (*id.* at p. 413) and not the child who was the subject of the dependency action. The father's criminal convictions were on appeal when the juvenile court sustained the dependency petition. The parents appealed. This court stated: "Evidence Code section 1300 permits: 'Evidence of a *final* judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the heresay [*sic*] rule when offered in a civil action to prove any fact essential to the judgment . . . .' (Italics added.) A judgment on appeal is not final. (See Cal. Rules of Court, [former] rule 24.) Thus, the father's convictions on appeal would not be competent to prove the father was a child molester under . . . Evidence Code section 1300." (*In re L.S., supra*, 189 Cal.App.3d at p. 413.) We stated that the juvenile court sustained the petition "solely upon inadmissible evidence." (*Id.* at p. 415.) We said "the barren fact the father suffered a conviction which was on appeal, without more, does not support a finding of depravity and unfitness of the home" (*id.* at p. 414), and further said that the juvenile court's finding of dependency was "not sustained by substantial evidence." (*Id.* at p. 415.)

■ Our opinion in *In re L.S., supra*, 189 Cal.App.3d. 407, appears to have assumed that the term "final judgment" in Evidence Code section 1300 embraced the concept of finality with which we, as an appellate court, are perhaps most familiar. The finality of a decision of the Court of Appeal, a topic addressed by California Rules of Court, former rule 24, is now the subject of rule 8.264 of the recently revised California Rules of Court. "Except as otherwise provided in this rule, a Court of Appeal decision . . . is final in that court 30 days after filing." (Cal. Rules of Court, rule 8.264(b)(1).) Upon a closer examination of the issue, however, we now conclude that our resolution of this issue in *In re L.S., supra*, 189 Cal.App.3d 407, was ill advised, and we disapprove it. " 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' " (*Wolf v. Colorado* (1949) 338 U.S. 25, 47 [93 L.Ed. 1782, 69 S.Ct. 1359] (dis. opn. of Rutledge, J.); see also *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 394, fn. 1 [250 Cal.Rptr. 515, 758 P.2d 1046].) *In re L.S.* does not appear to have been

followed by any other published opinion. Nor has the California Supreme Court ever squarely addressed the issue of the meaning of final judgment in Evidence Code section 1300. In *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197 [216 Cal.Rptr. 425, 702 P.2d 583], Yarbrough was convicted of second degree murder, and was then sued by the victim's son for wrongful death. He moved in the civil action for appointment of counsel to represent him. The trial court appointed counsel, but refused to order compensation for that representation. The California Supreme Court entertained Yarbrough's petition for writ of mandate, addressed the issue of representation in the civil case, and remanded the case to the superior court for further proceedings. The court's opinion mentioned that Yarbrough's criminal appeal was "pending" (*id.* at p. 201), and later in the opinion stated that "[t]he conviction itself will, of course, be admissible at the civil trial as an exception to the hearsay rule. (Evid. Code, § 1300.)" (*Yarbrough v. Superior Court, supra,* 39 Cal.3d at p. 205.) The admissibility of the conviction was not, however, an issue in dispute in the case, and "[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; accord, *People v. Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769]; *Cobb v. University of So. California* (1995) 32 Cal.App.4th 798, 803 [38 Cal.Rptr.2d 543].)

C. *A Conviction for First Degree Murder Is Prima Facie Evidence of a Felonious and Intentional Killing*

Having concluded that the judgment of the appellant's first degree murder of Laci Peterson was evidence that appellant intentionally and feloniously killed her, we see no merit to appellant's contention that this evidence was insufficient to support the granting of summary judgment in this case. If this case had gone to trial, and if (1) the Administrator had presented evidence of the criminal conviction and rested; (2) appellant had presented no evidence that he did not feloniously and intentionally kill Laci Peterson; (3) the trier of fact had concluded, by a preponderance of the evidence, that appellant feloniously and intentionally killed Laci Peterson; and (4) appellant then appealed from that judgment and argued that the evidence was insufficient to sustain the civil judgment, we would have no difficulty affirming that judgment. As the Law Revision Commission comment to Evidence Code section 1300 points out at 29B pt. 4 West's Annotated Evidence Code, *supra,* at page 396, a person suing to recover a reward offered for the arrest and conviction of a person who committed a particular crime may "use a judgment of conviction as evidence that the person convicted committed the crime." That civil plaintiff need not bring in witnesses from the criminal trial

to survive a defense motion for nonsuit. To require such additional evidence in cases where there is no defense would defeat the purpose of the hearsay exception. In *Schindler v. Royal Insurance Co.* (1932) 258 N.Y. 310 [179 N.E. 711], the court stated that a criminal conviction is "prima facie evidence of the facts involved" in the crime, and that " 'the conviction is admissible in evidence, not merely as proof of the conviction, but also as presumptive proof of the commission of the crime.' " (*Id.* at p. 314, italics omitted.) In *Noland v. Farmers Ins. Co., Inc.* (1995) 319 Ark. 449 [892 S.W.2d 271], an insured sued the insurer for recovery under a homeowners insurance policy after the insured's house was destroyed by fire. The insurer moved for summary judgment. The insurer relied on a provision of the policy stating: " 'Intentional Acts. If any insured directly causes or arranges for a loss of covered property in order to obtain insurance benefits, this policy is void. *We will not pay you or any other insured* for this loss.' " (*Id.*, 892 S.W.2d at p. 273.) The insurer presented evidence of the conviction of the insured's wife (who was also an insured) for arson. The insurer's motion was granted. The appellate court affirmed the judgment in favor of the insurer, and found no insufficiency of the evidence. "We note that evidence of a final judgment adjudging a person guilty of a felony is admissible to prove any fact essential to sustain a civil judgment. [Ark.R.Evid. 803(22).] Here, Farmers' proof included a copy of [wife's] judgment of convictions for the felony arson and fraud crimes relevant in the circumstances here, but [husband] offered no evidence to rebut or disprove the convictions. He was required to meet proof with proof which he failed to do." (*Noland v. Farmers Ins. Co., Inc., supra,* 892 S.W.2d at p. 273.) We have a similar situation in the case before us. The Administrator's evidence was sufficient, and was unrebutted. Any evidence that appellant did not feloniously and intentionally kill his wife would have created a triable issue of fact. Appellant presented no such evidence, and the superior court properly granted the Administrator's motion.[2]

---

[2] We note that Evidence Code section 452.5 states: "(a) The official acts and records specified in subdivisions (c) and (d) of Section 452 include any computer-generated official court records, as specified by the Judicial Council which relate to criminal convictions, when the record is certified by a clerk of the superior court pursuant to Section 69844.5 of the Government Code at the time of computer entry. [¶] (b) An official record of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant to Section 1280 to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record."

Neither of the parties has mentioned this statute, which was enacted in 1996 and thus was in effect at all times pertinent to this case. Given our resolution of this case, we need not and do not address the issue of whether subdivision (b) of Evidence Code section 452.5 separately and independently authorized the superior court to infer from the certified and appealed "Commitment Judgment of Death" that appellant intentionally and feloniously killed Laci Peterson. (See *People v. Duran* (2002) 97 Cal.App.4th 1448, 1460 [119 Cal.Rptr.2d 272]: "We conclude that Evidence Code section 452.5, subdivision (b) creates a hearsay exception allowing admission

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Gomes, J., and Kane, J., concurred.

Appellant's peitition for review by the Supreme Court was denied January 23, 2008, S158959. Baxter, J., did not participate therein.

of qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred.")